COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-187-CR

 

 

ISAAC TRANEIL MCDADE                                                     APPELLANT

A/K/A
ISSAC MCBRIDE

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








A jury convicted Appellant
Isaac Traneil McDade a/k/a Isaac McBride of theft of a motor vehicle valued at
more than $20,000 but less than $100,000, and the trial court sentenced McDade
to twenty years=
confinement.  In four issues, McDade
argues that the evidence is legally and factually insufficient to support his
conviction and that his due process rights were violated by an impermissibly
suggestive pretrial procedure used to identify him and by the State=s failure to disclose material, exculpatory evidence before
trial.  We will affirm.

II.  Factual and Procedural Background

Zach McCoy and Thomas Kelley
were remodeling a maternity store located in Fort Worth on March 13, 2007.  They were locking the entrance to the store
sometime between 4:30 and 5:00 p.m. when they noticed someone drive off in
Kelley=s truck, which Kelley had parked about forty yards away and left
running.  Kelley chased the truck on foot
briefly but was unable to catch up to it. 
McCoy jumped into his vehicle, commenced following Kelley=s truck, called 911, and explained to the 911 operator what was
happening as he pursued the truck. 
Kelley reported the incident to the police too.








McCoy followed Kelley=s truck into an Albertson=s parking lot located near the West Freeway, pulled in behind the
truck, which the driver had just parked, exited his vehicle, and confronted the
driver.  McCoy was able to get a look at
the driver, who he identified at trial as McDade.  McCoy told McDade that he was going to jail,
but McDade struck McCoy several times, giving McCoy a busted lip and five or
six knots on his head.  McCoy was Acompletely disoriented@ and Aknocked out@ Afor a minute
or so@ before he awoke to the 911 operator calling him back.  McCoy observed McDade running towards the
Albertson=s store;
however, he did not see McDade enter the store.

Officer White arrived at the
Albertson=s parking
lot soon after McCoy=s
confrontation with McDade.  Officer White
observed that McCoy had cuts on his bloody face and was out of breath and Aexcited,@ Apumped up,@ and Apretty shook up.@  McCoy gave Officer White McDade=s description, which was a black male, about 5'9" to 5'11"
tall, and wearing a black shirt, black pants, and white athletic shoes.  Officer White advised other officers of the
description and called an ambulance.

Officer Ochoa arrived at the
scene about six minutes after Officer White. 
He went to the Albertson=s to look for McDade.  Officer
Ochoa checked the bathroom and saw a male in a stall matching McDade=s description.  Officer Ochoa
exited the bathroom, called for assistance, and waited with two other officers
outside of the bathroom.  After about ten
minutes, the officers entered the bathroom, observed McDade exiting the stall
or washing his hands, and detained him.








In the meantime, officers had
detained another individual at a nearby bus stop, but McCoy, who was fully
conscious and coherent, said without hesitation after seeing him that the
person was the wrong individual.  About
twenty minutes after the ambulance arrived, officers showed up with McDade,
whom McCoy identified without hesitation as the individual who had taken Kelley=s truck.  McDade had
fresh-looking cuts and scrapes on his knuckles.

A few days after the
incident, Officer Barron showed McCoy a photographic spread that included
McDade=s photo.  McCoy was unable to
identify McDade in any of the photos. 
Officer Barron did not include this information in the police
report.  Officer Barron testified that
Kelley=s truck was worth $25,500 at the time of the incident.

III.  Legal and Factual Sufficiency

McDade argues in this first
two issues that the evidence is legally and factually insufficient to support
his conviction.  However, he challenges
the sufficiency of the evidence only as it relates to his identification as the
individual responsible for the motor vehicle theft.








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








We may not simply substitute
our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.








Here, the evidence
demonstrates that McCoy followed Kelley=s truck from the location where it was taken all the way to the
Albertson=s parking
lot. McCoy parked his vehicle behind Kelley=s truck and confronted McDade, who had just started to walk away.  McCoy spoke briefly with McDade, telling him
that he was going to jail and that he should just Ahang out.@  The prosecutor asked McCoy if this was Athe first time that [he] had really got to look at who it was driving
your friend=s pickup
truck?@  McCoy responded, AYes, sir, it was.@  About twenty minutes after the
ambulance had arrived, McCoy identified McDade as the individual responsible
for taking Kelley=s
truck.  McCoy identified McDade without
hesitation, stating, Athat=s him,@ four or
five times in rapid succession.  McCoy=s unwavering and unequivocal, positive identification of McDade came
after McCoy had told officers that another individual that they had detained
was not the person responsible for taking Kelley=s truck.  McCoy also suffered
injuries to his head from his confrontation with McDade, and McDade had cuts
and scrapes on his knuckles.

In challenging the evidence
supporting McCoy=s
identification of him as the person responsible for taking Kelley=s truck, McDade points to evidence that McCoy was Acompletely disoriented@ and Aknocked out@ briefly before he awoke to the 911 operator calling him back.  He also directs us to evidence that McCoy was
unable to identify McDade from the six-man photographic spread he viewed two
days later.  McCoy, however, was fully
conscious and fully coherent when he identified McDade, and McCoy was unable to
positively identify McDade in the photographic spreadCwhich included photographs that all Alooked pretty much identical@ to himCbecause he
was unsure which photo was McDade=s, not because the photograph of the person who took Kelley=s truck was not included in the spread.  We are required to defer to the jury=s determination of the weight to be given contradictory testimonial
evidence unless the record clearly reveals that a different result is
appropriate.  Johnson, 23 S.W.3d
at 8.  Considering the evidence above,
the record here does not clearly reveal that a different result is appropriate;
we therefore defer to the jury=s implied determination that McCoy correctly identified McDade as the
individual responsible for the motor vehicle theft.








Viewing the evidence in the
light most favorable to the verdict, we hold that the evidence is legally
sufficient to support McDade=s conviction for theft of a motor vehicle valued at more than $20,000
but less than $100,000.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  Moreover, viewing the evidence in a neutral
light, we hold that the evidence is factually sufficient to support McDade=s conviction.  See Watson,
204 S.W.3d at 414; Drichas, 175 S.W.3d at 799.  Accordingly, we overrule McDade=s first and second issues.

IV.  Impermissibly Suggestive Identification

In his third issue, McDade argues
that the procedure by which McCoy first identified him as the individual who
took Kelley=s truckChandcuffed, surrounded by police officers, and presented to McCoy
aloneCwas so impermissibly suggestive as to give rise to a substantial
likelihood of irreparable misidentification. 
Consequently, he argues that his pretrial identification should have
been excluded because the procedure used denied him due process.








To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez
v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

Here, McDade failed to assert
an objection or file a motion challenging both McCoy=s and Officer White=s testimony that McCoy identified McDade on March 13, 2007, as the
individual responsible for taking Kelley=s truck.  McDade has thus
forfeited this complaint because he did not raise it at trial.  See Tex.
R. App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249 at 265; Brown
v. State, No. 01-02-00856-CR, 2003 WL 1937207, at *4 (Tex. App.CHouston [1st Dist.] Apr. 24, 2003, no pet.) (mem. op.) (not designated
for publication) (holding that appellant waived issue of whether identification
procedures used by police were impermissibly suggestive or whether in-court
identification of appellant was tainted by out-of-court procedures); Coffee
v. State, No. 03-98-00337-CR, 1999 WL 958966, at *2 (Tex. App.CAustin Oct. 21, 1999, no pet.) (not designated for publication)
(holding that appellant failed to preserve for appellate review arguments
regarding in-court identification stemming from impermissibly suggestive
pretrial show-up).  We overrule McDade=s third issue.

 








V.  Exculpatory Evidence

McDade argues in his fourth
and final issue that his due process rights were violated because the State
committed a clear Brady violation by failing to disclose material,
exculpatory evidence before trial:  McCoy=s inability to identify him in a photographic spread two days after
the incident occurred.

The State has an affirmative
duty to disclose exculpatory evidence that is material either to guilt or
punishment.  Brady v. Maryland,
373 U.S. 83, 83 S. Ct. 1194 (1963).  The
State=s duty to reveal Brady material attaches when the information comes
into its possession, not when it is requested.  Thomas v. State, 841 S.W.2d 399, 407
(Tex. Crim. App. 1992).  To establish a
due process violation under Brady, a defendant must show the following: (1)
evidence was suppressed; (2) the suppressed evidence was favorable to the
defendant; and (3) the suppressed evidence was material to either guilt or
punishment.  Fox v. State, 175
S.W.3d 475, 490 (Tex. App.CTexarkana 2005, pet. ref=d).








When the Brady material
is discovered during trial, the initial inquiry is whether the appellant was
prejudiced by the delayed disclosure.  Palmer
v. State, 902 S.W.2d 561, 565 (Tex. App.CHouston [1st Dist.] 1995, no pet.); see also Little v. State,
991 S.W.2d 864, 867 (Tex. Crim. App. 1999) (reasoning that to prevail on a Brady
claim, the appellant must show that the State=s tardy disclosure prejudiced the appellant).  To show prejudice, the appellant must show a
reasonable probability that, had the evidence been disclosed to the defense
earlier, the result of the proceeding would have been different.  Little, 991 S.W.2d at 866.  The disclosure of Brady material
during trial satisfies the requirements of due process A[i]f the defendant received the material in time to put it to
effective use at trial.@  Palmer, 902 S.W.2d at 565.  A defendant=s conviction should not be reversed simply because the Brady material
was not disclosed as early as it might have and should have been.  Id.

Here, the undisclosed
information was revealed early in the trial when the prosecutor questioned
McCoy, who was the first State=s witness to testify, about the photographic spread that he viewed a
few days after the incident. McDade=s attorney cross-examined McCoy about the circumstances surrounding
his viewing of the photographic spread. 
Later in the trial, the State questioned Officer Barron about the
photographic spread too.  McDade=s attorney cross-examined Officer Barron, who testified that he showed
McCoy the photographic spread and that he did not include the fact that McCoy
was unable to identify McDade=s photograph in the police report because McCoy had already identified
McDade on the scene a few days earlier. 
McDade=s attorney
further utilized the State=s failure to disclose McCoy=s inability to identify McDade in the photographic spread during his
closing argument.








The record thus shows that
the undisclosed information came to light at such a time that McDade was able
to put it to effective use at trial. 
Considering this and the fact that McCoy positively and
unequivocally  identified McDade on a
previous occasion, McDade has failed to show that there was a reasonable
probability that, had the evidence been disclosed earlier, the result of the
trial would have been different.  See
Little, 991 S.W.2d at 866.  Moreover,
McDade failed to request a continuance when McCoy testified about the
previously undisclosed information, which further tends to  demonstrate that the State=s delay in disclosing the photographic spread information was not
prejudicial.  See Apolinar v. State,
106 S.W.3d 407, 421 (Tex. App.CHouston [1st Dist.] 2003), aff=d on other grounds, 155 S.W.3d 184 (Tex.
Crim. App. 2005) (stating that a defendant=s failure to request a continuance when Brady material is
disclosed at trial waives error or indicates that the delay in receiving the
evidence was not truly prejudicial).  We
hold that McDade=s due
process rights were not violated by the State=s delay in disclosing McCoy=s inability to identify McDade in a photographic spread.  Accordingly, we overrule McDade=s fourth issue.

 

 

 








VI.  Conclusion

Having overruled all of
McDade=s issues, we affirm the trial court=s judgment.

 

DIXON W. HOLMAN

JUSTICE

PANEL B: 
LIVINGSTON, HOLMAN, and GARDNER, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: June 5, 2008











[1]See Tex. R.
App. P. 47.4.