IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-76,219






EX PARTE ANTHONY MARES, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM ANDERSON COUNTY




 

 Johnson, J., delivered the opinion for a unanimous Court.


O P I N I O N



 In April 1999, a jury convicted applicant of aggravated robbery and assessed punishment at
99 years' imprisonment. The Twelfth Court of Appeals affirmed the judgment and sentence on
direct appeal. Mares v. State, No. 12-99-00278-CR, slip op. (Tex. App.--Tyler March 31, 2000)
(not designated for publication). More than ten years later, applicant now asserts in an application
for writ of habeas corpus that the prosecution failed to disclose exculpatory evidence in violation
of his Fourteenth Amendment due-process rights. Brady v. Maryland, 373 U.S. 83 (1963). We filed
and set this writ in order to determine whether there is a reasonable probability that either the verdict
or the sentence would have been different had the state timely disclosed evidence purportedly
favorable to applicant. The trial court made findings of fact and conclusions of law, certified
proceedings to this Court pursuant to Article 11.07 of the Texas Code of Criminal Procedure, and
recommended that applicant be granted relief. We filed and set the case for submission. We grant
partial relief.

Standard of Review

 In a habeas corpus proceeding, the applicant bears the burden of proving by a preponderance
of the evidence that the facts entitle him to relief. Ex parte Peterson, 117 S.W.3d 804, 818 (Tex.
Crim. App. 2003). A materiality claim based on a Brady violation is a mixed question of law and
fact. Summers v. Dretke, 431 F.3d 861, 878 (5th Cir. 2005) (citing Trevino v. Johnson, 168 F.3d
173, 185 (5th Cir. 1999). Applications of law are reviewed de novo unless resolution of the issue
also rests on a determination of fact, such as the credibility of witnesses. Ex parte Peterson, 117
S.W.3d at 819. Accordingly, the trial court's recommendation to grant or deny relief is afforded
much deference when supported by the record. Id.

Facts

 In January of 1998, applicant and his girlfriend, Jessica Whitlock, robbed the owners of the
restaurant that was below the apartment of applicant's sister, where the couple often stayed
overnight. On the evening of the robbery, either applicant or Whitlock entered the restaurant with
a gun and demanded money from Mrs. Yao, who owned the restaurant with her husband. Mrs. Yao
screamed. Hearing the commotion, Mr. Yao (Yao) emerged from the kitchen and confronted the
masked assailant. The assailant turned the gun on Yao, attempted to cock it, then ran out of the
restaurant. Yao pursued the assailant to the back of the building, where he saw the intruder and a
second assailant just before he tripped and fell. As Yao was trying to get to his feet, one of the two
assailants shot him. Both assailants then fled the scene. 

 After her arrest, Whitlock confessed in a handwritten statement that it was her idea to commit
the robbery and that applicant was resistant. (Findings of Fact and Suggested Conclusions of Law
at 2.) Whitlock said that she prodded applicant to help her by telling him that she was going to
commit the robbery with or without him. Id. According to Whitlock, applicant eventually, albeit
reluctantly, agreed. Whitlock admitted that she was the masked assailant who had entered the
restaurant with a gun in hand while applicant waited outside, but asserted that she did not shoot 
Yao; she handed the gun off to applicant behind the restaurant and kept running. Id. Whitlock said
she heard a gunshot as she ran and that applicant admitted when he caught up with her that he had
shot Yao. Id.

 Because Whitlock was a minor at the time of the robbery, a hearing was held to determine
if she would stand trial as an adult. Whitlock testified at her certification trial, contrary to her written
confession, that robbing the Yaos was applicant's idea. (Findings of Fact and Suggested
Conclusions of Law at 2-3.) In Whitlock's third version, at applicant's trial, she testified that the
robbery was applicant's idea and that it was applicant who entered the restaurant while she waited
outside and watched the robbery through a window. (Trial Record, 5 R.R. 39, 49.)

The Investigation

 Police took a statement from Yao while he was recovering in the hospital. Yao said that he
had assumed the masked assailant who entered the restaurant was a man and that he perceived this
person as being a little taller than he was-five feet, six inches. He also said that he had seen another
masked assailant. (1)

 Later that year, after Yao was released from the hospital, then Anderson County Criminal
District Attorney, Jeff Herrington, also interviewed Yao. During the interview, Yao told Herrington
that the person who shot him was clearly the shorter of the two assailants and that the shooter was
unfamiliar with the use of the gun. (Findings of Fact and Suggested Conclusions of Law at 4 and
Stipulation of Evidence at 4.) Yao died of a heart attack on September 12, 1998, and was therefore
unavailable to repeat to defense counsel the statements he made to Herrington or to testify at trial
in April 1999.

 The record reflects that Whitlock is the shorter of the two at five feet, two inches tall, while
applicant is five feet, ten inches tall. (2) There is also evidence that, prior to the robbery, applicant took
target practice with the gun matched to the robbery and was familiar with its operation. (Trial
Record, 5 R.R. 31; 9 R.R. 33.) Based on this information, Herrington believed that Whitlock--not
applicant--was the shooter. (Findings of Fact and Suggested Conclusions of Law at 4.) Before
further action was taken in the case, and before Herrington documented Yao's statements in the case
file, Doug Lowe replaced Herrington as Anderson County's Criminal District Attorney. 

 Because Lowe and other employees in the Anderson County Criminal District Attorney's
office were unaware of Herrington's interview with Yao, Lowe pursued prosecution of applicant as
the shooter, based on Whitlock's statements. While Whitlock's first two statements varied, Lowe
noted that Whitlock maintained that it was applicant who shot Yao. In exchange for Whitlock's
testimony against applicant at applicant's trial, Lowe reduced Whitlock's charge from aggravated
robbery to robbery and promised her a favorable sentence recommendation. Applicant received a
99-year prison sentence at trial while, after her testimony, Whitlock received only a 10-year
sentence. (3)

Due-Process Violation Under Brady

 Applicant's writ alleges that he was deprived of his constitutional right to due process when
the state failed to disclose Yao's statements to Herrington regarding the shooter's characteristics.
Brady, 373 U.S. at 87; Little v. State, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). Under Brady,
the state must timely disclose exculpatory evidence that is unknown to the defendant but known to
the prosecution or any of its agents. See Giglio v. United States, 405 U.S. 150, 153-54 (1972); see
also Hall v. State, 283 S.W.3d 137, 170-71 (Tex. App.-Austin 2009). Brady material includes
impeachment evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). A prosecutor's duty to
reveal exculpatory evidence to the defense attaches when the information comes into the state's
possession. Harm v. State, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006).

 A Brady violation may be reversible constitutional error if: (1) the evidence was withheld;
(2) it was favorable to defendant; and (3) it was material. Id. at 406; Little, 991 S.W.2d at 866. 
Evidence is material if there is a reasonable probability that, in light of all the evidence, the outcome
would have been different had the withheld evidence been timely disclosed to the defendant.
Hampton v. State, 86 S.W.3d 603, 612 (quoting United States v. Agurs, 427 U.S. 97, 109 (1976)).
A reasonable probability is a probability sufficient to undermine confidence in the outcome of the
trial. Strickland v. Washington, 466 U.S. 668, 694 (1984). 

 The state concedes that it withheld evidence when it failed to disclose Yao's statements that
the shooter was the shorter of the two assailants and was unfamiliar with the operation of the gun,
thus satisfying Brady's first prong. Nevertheless, the state contends that applicant cannot satisfy the
second prong of Brady because the withheld evidence was not favorable to applicant's defense.
Applicant denied any involvement in the robbery, but Yao's statements independently established
that Whitlock was not a lone assailant. (State's Supplemental Brief, 20.) The state's position
presupposes that applicant would have employed the same defense strategy even if Yao's statements
had been timely disclosed. However, it is conceivable that applicant would have adopted a different
defense strategy in light of Yao's statements. Limiting applicant's defense strategies by withholding
exculpatory evidence is an impermissible interference with a defendant's trial preparation or
presentation. Thomas v. State, 841 S.W.2d 399, 405 (Tex. Crim. App. 1992). 

 Even if applicant had employed the same strategy, the withheld statements were exculpatory
as to the issue of who actually shot Yao and provided applicant with an alternative argument for
which he otherwise had no corroborating evidence. According to the shooting victim's own
assessment, the shorter of the two robbers shot Yao, and applicant is the taller of the two. (4)
 We find
that the second prong of Brady is satisfied.

 The state also asserts that, because the prosecution has no duty to disclose inadmissible
evidence, applicant must show that Yao's statements were admissible as non-hearsay or pursuant
to a hearsay exception in order to satisfy Brady's materiality prong. Lagrone v. State, 942 S.W.2d
602, 615 (Tex. Crim. App. 1997). The state argues that, if the evidence cannot be introduced at trial,
there is no reasonable probability that the outcome would have been different. For several reasons,
however, it is not a foregone conclusion that the evidence, or implications that might flow from it,
could not have been introduced at trial.

 Applicant points out that, if he had known of the withheld statements, he could have either
interviewed Yao and perhaps obtained a signed statement that memorialized what he told Herrington
or petitioned the trial court to allow him to take Yao's deposition, thereby preserving the evidence
in admissible form if Yao became unable to testify, as he did. (5) (Supplemental Findings of Fact and
Conclusions of Law, 1.) Janecka v. State, 937 S.W.2d 456, 469 (Tex. Crim. App. 1996). If a sworn
statement had been obtained from Yao, and had Yao testified at trial, the statement would have been
available for purposes of cross-examination and impeachment of Yao. If Yao became unavailable,
as he did, the defense strategy would likely have been different than it was when defense counsel was
without knowledge of what Yao told Herrington, and at the least, the facts set out in that statement
would have been available for the purpose of formulating the cross-examination of other witnesses.

 Under certain circumstances, such as when a witness exclusively possesses information
critical to a significant factor at trial, a defendant may depose a witness. Morrow v. State, 139
S.W.3d 736, 743 (Tex. App.-Texarkana 2004, no pet.). Such a deposition may be admitted into
evidence when the witness is unavailable to testify and the other party has had a full and fair
opportunity to cross-examine the witness. Russell v. State, 604 S.W.2d 914, 920 (Tex. Crim. App.
1980); see also J.H. Crabb, Sufficiency of Showing of Grounds for Admission of Deposition in
Criminal Case, 44 A.L.R.2d 768, § 7 (2009, orig. published 1955). Clearly, Yao was in exclusive
possession of information critical to a significant factor at trial-the relative heights of the shooter
and the co-defendant, thus the identity of the shooter. While the taking of a witness's deposition is
uncommon in criminal cases, it is available in appropriate circumstances. Lacking awareness that 
Yao had information critical to the defense, defense counsel was not aware that a request for a
deposition was appropriate and so did not make such a request. Because the existence of Yao's
statements about the relative heights of the co-defendants were not recorded at a deposition, at 
Yao's death the information became hearsay and inadmissible at trial.

 While the state usually does not have a duty to turn over inadmissible evidence, the analysis
does not end there. If inadmissible evidence would give rise to the discovery of other admissible
evidence or witnesses, the state does have a duty to disclose that evidence. Sellers v. Estelle, 651
F.2d 1074, 1077 n.6 (5th Cir.1981), cert. denied, 455 U.S. 927 (1982). Even evidence that may not
be admissible may be material to preparation of the defendant's case and could become admissible
as impeachment evidence under appropriate circumstances. Id. Wisdom and best practices, then,
encourage a prosecutor to disclose all exculpatory and impeachment evidence. Here, because Yao's
statements were not revealed to applicant until eight years after trial and over eight years after Yao's
death, it is difficult to know whether the withheld evidence would have led to other admissible
evidence if it had been timely disclosed. In the instant case, applicant need not establish what other
evidence or witnesses he might have discovered. If the evidence had been timely disclosed, Yao's
statements, or the implication that, while applicant was involved in the robbery, he may not have
been the shooter, would have been available at trial.

Conclusion

 The withheld evidence does not exonerate applicant of his participation in the robbery, but
had the state timely disclosed Yao's statements, as required by Brady, the statements could have
been used by the defense to persuade the jury that applicant was not the shooter. In light of all the
evidence, including the highly favorable disposition of Whitlock's charges, the absence of the
withheld evidence undermines confidence in the jury's determination of punishment. Because
criminal trials are bifurcated, we may grant relief by ordering either a new trial or a new hearing on
punishment only. Ex parte Hill, 528 S.W.2d 125, 127 (Tex. Crim. App. 1975). We grant applicant
relief in part and remand the case to the trial court for a new punishment hearing.


Delivered: May 19, 2010

Do not publish
1. This statement partially contradicts Whitlock's first statement-that they had only one mask-but partially
supports it in that she stated in her first statement that she wore the only mask.
2. While the Anderson County booking sheet listed Whitlock's height at five feet, five inches, and the
parties stipulated to this measurement based on this source, records from the Texas Department of Criminal Justice
indicate that Whitlock is five feet, two inches, which is supported by Whitlock's testimony during applicant's trial. 
The record does not reveal the type of footwear worn by Whitlock during the robbery or at the time of her arrest.
3. [3] Additionally, the state promised Whitlock the possibility of six months' shock probation. (Written Stipulation of Evidence at 3.)
4. Whitlock testified at applicant's trial that applicant wore the single ski mask the couple possessed. (Trial
Record, 5 R.R. 43-44.) She further testified that applicant was the masked assailant who both entered the restaurant
and shot Yao. Id. at 49, 54. However, if they had only one mask, worn by applicant, it is reasonable to assume that 
Yao could have identified the second assailant as a female and have been able to give at least some details of her
appearance, such as race or hair color and length. Because he did not and further stated that the masked gun wielder
was about his height and seemed unfamiliar with the gun's operation, a rational jury could have concluded that
Whitlock's first statement was the most truthful of the three.

5. [5] See Tex. R. Evid. 804(b)(1) and Tex. Code Crim. Proc. arts. 39.02, 39.12, 39.14, et alia. Tex. R. Evid.
804(b)(1) states, "In criminal cases, the use of depositions is controlled by Chapter 39 of the Code of Criminal
Procedure."