

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,219

**EX PARTE ANTHONY MARES, Applicant**

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## FROM ANDERSON COUNTY

**JOHNSON, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

In April 1999, a jury convicted applicant of aggravated robbery and assessed punishment at 99 years' imprisonment. The Twelfth Court of Appeals affirmed the judgment and sentence on direct appeal. *Mares v. State*, No. 12-99-00278-CR, slip op. (Tex. App.—Tyler March 31, 2000) (not designated for publication). More than ten years later, applicant now asserts in an application for writ of habeas corpus that the prosecution failed to disclose exculpatory evidence in violation of his Fourteenth Amendment due-process rights. *Brady v. Maryland*, 373 U.S. 83 (1963). We filed and set this writ in order to determine whether there is a reasonable probability that either the verdict or the sentence would have been different had the state timely disclosed evidence purportedly favorable to applicant. The trial court made findings of fact and conclusions of law, certified

proceedings to this Court pursuant to Article 11.07 of the Texas Code of Criminal Procedure, and recommended that applicant be granted relief. We filed and set the case for submission. We grant partial relief.

## Standard of Review

In a habeas corpus proceeding, the applicant bears the burden of proving by a preponderance of the evidence that the facts entitle him to relief. *Ex parte Peterson,* 117 S.W.3d 804, 818 (Tex. Crim. App. 2003). A materiality claim based on a *Brady* violation is a mixed question of law and fact. *Summers v. Dretke,* 431 F.3d 861, 878 (5th Cir. 2005) (citing *Trevino v. Johnson,* 168 F.3d 173, 185 (5th Cir. 1999). Applications of law are reviewed *de novo* unless resolution of the issue also rests on a determination of fact, such as the credibility of witnesses. *Ex parte Peterson,* 117 S.W.3d at 819. Accordingly, the trial court's recommendation to grant or deny relief is afforded much deference when supported by the record. *Id.*

## Facts

In January of 1998, applicant and his girlfriend, Jessica Whitlock, robbed the owners of the restaurant that was below the apartment of applicant's sister, where the couple often stayed overnight. On the evening of the robbery, either applicant or Whitlock entered the restaurant with a gun and demanded money from Mrs. Yao, who owned the restaurant with her husband. Mrs. Yao screamed. Hearing the commotion, Mr. Yao (Yao) emerged from the kitchen and confronted the masked assailant. The assailant turned the gun on Yao, attempted to cock it, then ran out of the restaurant. Yao pursued the assailant to the back of the building, where he saw the intruder and a second assailant just before he tripped and fell. As Yao was trying to get to his feet, one of the two assailants shot him. Both assailants then fled the scene.

After her arrest, Whitlock confessed in a handwritten statement that it was her idea to commit the robbery and that applicant was resistant. (Findings of Fact and Suggested Conclusions of Law at 2.) Whitlock said that she prodded applicant to help her by telling him that she was going to commit the robbery with or without him. *Id.* According to Whitlock, applicant eventually, albeit reluctantly, agreed. Whitlock admitted that she was the masked assailant who had entered the restaurant with a gun in hand while applicant waited outside, but asserted that she did not shoot Yao; she handed the gun off to applicant behind the restaurant and kept running. *Id.* Whitlock said she heard a gunshot as she ran and that applicant admitted when he caught up with her that he had shot Yao. *Id.*

Because Whitlock was a minor at the time of the robbery, a hearing was held to determine if she would stand trial as an adult. Whitlock testified at her certification trial, contrary to her written confession, that robbing the Yaos was applicant's idea. (Findings of Fact and Suggested Conclusions of Law at 2-3.) In Whitlock's third version, at applicant's trial, she testified that the robbery was applicant's idea and that it was applicant who entered the restaurant while she waited outside and watched the robbery through a window. (Trial Record, 5 R.R. 39, 49.)

## The Investigation

Police took a statement from Yao while he was recovering in the hospital. Yao said that he had assumed the masked assailant who entered the restaurant was a man and that he perceived this person as being a little taller than he was–five feet, six inches. He also said that he had seen another masked assailant.[1]

---

[1] This statement partially contradicts Whitlock's first statement–that they had only one mask–but partially supports it in that she stated in her first statement that she wore the only mask.

Later that year, after Yao was released from the hospital, then Anderson County Criminal District Attorney, Jeff Herrington, also interviewed Yao. During the interview, Yao told Herrington that the person who shot him was clearly the shorter of the two assailants and that the shooter was unfamiliar with the use of the gun. (Findings of Fact and Suggested Conclusions of Law at 4 and Stipulation of Evidence at 4.) Yao died of a heart attack on September 12, 1998, and was therefore unavailable to repeat to defense counsel the statements he made to Herrington or to testify at trial in April 1999.

The record reflects that Whitlock is the shorter of the two at five feet, two inches tall, while applicant is five feet, ten inches tall.[2] There is also evidence that, prior to the robbery, applicant took target practice with the gun matched to the robbery and was familiar with its operation. (Trial Record, 5 R.R. 31; 9 R.R. 33.) Based on this information, Herrington believed that Whitlock—not applicant—was the shooter. (Findings of Fact and Suggested Conclusions of Law at 4.) Before further action was taken in the case, and before Herrington documented Yao's statements in the case file, Doug Lowe replaced Herrington as Anderson County's Criminal District Attorney.

Because Lowe and other employees in the Anderson County Criminal District Attorney's office were unaware of Herrington's interview with Yao, Lowe pursued prosecution of applicant as the shooter, based on Whitlock's statements. While Whitlock's first two statements varied, Lowe noted that Whitlock maintained that it was applicant who shot Yao. In exchange for Whitlock's testimony against applicant at applicant's trial, Lowe reduced Whitlock's charge from aggravated

_____

[2] While the Anderson County booking sheet listed Whitlock's height at five feet, five inches, and the parties stipulated to this measurement based on this source, records from the Texas Department of Criminal Justice indicate that Whitlock is five feet, two inches, which is supported by Whitlock's testimony during applicant's trial. The record does not reveal the type of footwear worn by Whitlock during the robbery or at the time of her arrest.

robbery to robbery and promised her a favorable sentence recommendation. Applicant received a 99-year prison sentence at trial while, after her testimony, Whitlock received only a 10-year sentence.[3]

## Due-Process Violation Under *Brady*

Applicant's writ alleges that he was deprived of his constitutional right to due process when the state failed to disclose Yao's statements to Herrington regarding the shooter's characteristics. *Brady,* 373 U.S. at 87; *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). Under *Brady,* the state must timely disclose exculpatory evidence that is unknown to the defendant but known to the prosecution or any of its agents. *See Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *see also Hall v. State*, 283 S.W.3d 137, 170-71 (Tex. App.–Austin 2009). *Brady* material includes impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). A prosecutor's duty to reveal exculpatory evidence to the defense attaches when the information comes into the state's possession. *Harm v. State,* 183 S.W.3d 403, 407 (Tex. Crim. App. 2006).

A *Brady* violation may be reversible constitutional error if: (1) the evidence was withheld; (2) it was favorable to defendant; and (3) it was material. *Id*. at 406; *Little,* 991 S.W.2d at 866. Evidence is material if there is a reasonable probability that, in light of all the evidence, the outcome would have been different had the withheld evidence been timely disclosed to the defendant. *Hampton v. State*, 86 S.W.3d 603, 612 (quoting *United States v. Agurs,* 427 U.S. 97, 109 (1976)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

The state concedes that it withheld evidence when it failed to disclose Yao's statements that

---

[3] Additionally, the state promised Whitlock the possibility of six months' shock probation. (Written Stipulation of Evidence at 3.)

the shooter was the shorter of the two assailants and was unfamiliar with the operation of the gun, thus satisfying *Brady's* first prong. Nevertheless, the state contends that applicant cannot satisfy the second prong of *Brady* because the withheld evidence was not favorable to applicant's defense. Applicant denied any involvement in the robbery, but Yao's statements independently established that Whitlock was not a lone assailant. (State's Supplemental Brief, 20.) The state's position presupposes that applicant would have employed the same defense strategy even if Yao's statements had been timely disclosed. However, it is conceivable that applicant would have adopted a different defense strategy in light of Yao's statements. Limiting applicant's defense strategies by withholding exculpatory evidence is an impermissible interference with a defendant's trial preparation or presentation. *Thomas v. State*, 841 S.W.2d 399, 405 (Tex. Crim. App. 1992).

Even if applicant had employed the same strategy, the withheld statements were exculpatory as to the issue of who actually shot Yao and provided applicant with an alternative argument for which he otherwise had no corroborating evidence. According to the shooting victim's own assessment, the shorter of the two robbers shot Yao, and applicant is the taller of the two.[4] We find that the second prong *of Brady* is satisfied.

The state also asserts that, because the prosecution has no duty to disclose inadmissible evidence, applicant must show that Yao's statements were admissible as non-hearsay or pursuant to a hearsay exception in order to satisfy *Brady's* materiality prong. *Lagrone v. State*, 942 S.W.2d

---

[4] Whitlock testified at applicant's trial that applicant wore the single ski mask the couple possessed. (Trial Record, 5 R.R. 43-44.) She further testified that applicant was the masked assailant who both entered the restaurant and shot Yao. *Id.* at 49, 54. However, if they had only one mask, worn by applicant, it is reasonable to assume that Yao could have identified the second assailant as a female and have been able to give at least some details of her appearance, such as race or hair color and length. Because he did not and further stated that the masked gun wielder was about his height and seemed unfamiliar with the gun's operation, a rational jury could have concluded that Whitlock's first statement was the most truthful of the three.

602, 615 (Tex. Crim. App. 1997). The state argues that, if the evidence cannot be introduced at trial, there is no reasonable probability that the outcome would have been different. For several reasons, however, it is not a foregone conclusion that the evidence, or implications that might flow from it, could not have been introduced at trial.

Applicant points out that, if he had known of the withheld statements, he could have either interviewed Yao and perhaps obtained a signed statement that memorialized what he told Herrington or petitioned the trial court to allow him to take Yao's deposition, thereby preserving the evidence in admissible form if Yao became unable to testify, as he did.[5] (Supplemental Findings of Fact and Conclusions of Law, 1.) *Janecka v. State*, 937 S.W.2d 456, 469 (Tex. Crim. App. 1996). If a sworn statement had been obtained from Yao, and had Yao testified at trial, the statement would have been available for purposes of cross-examination and impeachment of Yao. If Yao became unavailable, as he did, the defense strategy would likely have been different than it was when defense counsel was without knowledge of what Yao told Herrington, and at the least, the facts set out in that statement would have been available for the purpose of formulating the cross-examination of other witnesses.

Under certain circumstances, such as when a witness exclusively possesses information critical to a significant factor at trial, a defendant may depose a witness. *Morrow v. State*, 139 S.W.3d 736, 743 (Tex. App.–Texarkana 2004, no pet.). Such a deposition may be admitted into evidence when the witness is unavailable to testify and the other party has had a full and fair opportunity to cross-examine the witness. *Russell v. State,* 604 S.W.2d 914, 920 (Tex. Crim. App. 1980); *see also* J.H. Crabb, *Sufficiency of Showing of Grounds for Admission of Deposition in*

---

[5] *See* Tex. R. Evid. 804(b)(1) and Tex. Code Crim. Proc. arts. 39.02, 39.12, 39.14, *et alia*. Tex. R. Evid. 804(b)(1) states, "In criminal cases, the use of depositions is controlled by Chapter 39 of the Code of Criminal Procedure."

*Criminal Case*, 44 A.L.R.2d 768, § 7 (2009, orig. published 1955). Clearly, Yao was in exclusive possession of information critical to a significant factor at trial–the relative heights of the shooter and the co-defendant, thus the identity of the shooter. While the taking of a witness's deposition is uncommon in criminal cases, it is available in appropriate circumstances. Lacking awareness that Yao had information critical to the defense, defense counsel was not aware that a request for a deposition was appropriate and so did not make such a request. Because the existence of Yao's statements about the relative heights of the co-defendants were not recorded at a deposition, at Yao's death the information became hearsay and inadmissible at trial.

While the state usually does not have a duty to turn over inadmissible evidence, the analysis does not end there. If inadmissible evidence would give rise to the discovery of other admissible evidence or witnesses, the state does have a duty to disclose that evidence. *Sellers v. Estelle*, 651 F.2d 1074, 1077 n.6 (5th Cir.1981), *cert. denied*, 455 U.S. 927 (1982). Even evidence that may not be admissible may be material to preparation of the defendant's case and could become admissible as impeachment evidence under appropriate circumstances. *Id.* Wisdom and best practices, then, encourage a prosecutor to disclose all exculpatory and impeachment evidence. Here, because Yao's statements were not revealed to applicant until eight years after trial and over eight years after Yao's death, it is difficult to know whether the withheld evidence would have led to other admissible evidence if it had been timely disclosed. In the instant case, applicant need not establish what other evidence or witnesses he might have discovered. If the evidence had been timely disclosed, Yao's statements, or the implication that, while applicant was involved in the robbery, he may not have been the shooter, would have been available at trial.

**Conclusion**

The withheld evidence does not exonerate applicant of his participation in the robbery, but had the state timely disclosed Yao's statements, as required by *Brady*, the statements could have been used by the defense to persuade the jury that applicant was not the shooter. In light of all the evidence, including the highly favorable disposition of Whitlock's charges, the absence of the withheld evidence undermines confidence in the jury's determination of punishment. Because criminal trials are bifurcated, we may grant relief by ordering either a new trial or a new hearing on punishment only. *Ex parte Hill*, 528 S.W.2d 125, 127 (Tex. Crim. App. 1975). We grant applicant relief in part and remand the case to the trial court for a new punishment hearing.


Delivered: May 19, 2010
Do not publish