Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-11-00445-CR

Efrain **OJEDA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 12, Bexar County, Texas
Trial Court No. 308916
Honorable Scott Roberts, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Catherine Stone, Chief Justice
            Phylis J. Speedlin, Justice
            Steven C. Hilbig, Justice

Delivered and Filed:  July 18, 2012

AFFIRMED

Efrain Ojeda appeals his conviction for driving while intoxicated.  We affirm the judgment of the trial court.

### BACKGROUND

On November 15, 2009, off-duty police officer Lee Biegert was driving in the far-left lane of northbound Highway 281 when his vehicle came into contact with Ojeda's, which was in the center lane.  Biegert testified that the accident occurred on a curvy stretch of the road.  Both

vehicles moved to the side of the road. Biegert stated that Ojeda was belligerent and aggressive towards him and that he invited Biegert to fight. Ojeda accused Biegert of causing the accident and said, "Just call the f---ing police." Biegert testified that he could detect the odor of alcohol on Ojeda and that Ojeda's eyes were glassy.

Officer Eluterio Rendon responded to the accident. Ojeda told Rendon that the other driver caused the accident and was attempting to flee the scene. Rendon testified that he smelled the odor of alcoholic beverage on Ojeda's breath. Once a second officer arrived, Rendon interviewed Biegert regarding the accident, and wrote a report in which he placed fault with Ojeda. Rendon suspected that Ojeda was intoxicated.

Officer Tommy Johnson was the second officer to respond to the accident and evaluated Ojeda for possible DWI. He testified that even though Ojeda denied drinking, he had a strong odor of alcohol on his breath. Johnson also observed that Ojeda had bloodshot, droopy eyes. Ojeda told Johnson that he had taken Vicodin about four hours prior to the accident; however, based on his training as a drug recognition expert, Johnson testified that he did not believe Ojeda was under the influence of Vicodin because his pupils were not constricted.

Johnson administered the HGN[1] field sobriety test and testified that Ojeda displayed six of six clues for intoxication. Johnson admitted that the HGN test, which was conducted in front of the flashing lights on his police vehicle, could be affected by flashing or strobe lights. Ojeda refused to perform any further field sobriety tests, and also refused to give a breath or blood sample. Johnson's dash-board camera recorded the interaction, and the recording was played for the jury. Johnson noted that Ojeda was uncooperative and had difficulty following instructions. Johnson concluded that Ojeda was intoxicated and arrested him for driving while intoxicated.

---

[1] HGN stands for horizontal gaze nystagmus, and is a field sobriety test that measures involuntary eye movement by directing a subject to follow a light with his eyes.

Additionally, audio recordings of 911 calls and police radio traffic on the night of the accident were admitted into evidence. The first call was made by Ojeda at 12:27 p.m. At the same time, Biegert made a call through the police information channel reporting an accident between a motorist and an off-duty officer. Ojeda made another call to 911 at 12:38 p.m. The recordings were played to the jury without objection.

The jury found Ojeda guilty of the offense of driving while intoxicated (second offense), and the trial court assessed punishment at one year in the Bexar County Jail, suspended for two years, and a fine of $1,500. Ojeda timely appealed.

I. *Exculpatory Evidence*

In his first issue, Ojeda argues that the trial court erred in refusing to grant his motion for a mistrial because the prosecution failed to timely disclose exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). Specifically, Ojeda claims that the State failed to turn over a recording of a call he made to 911 until after he had conducted voir dire based on his defense strategy of the missing evidence.

Shortly after Ojeda was charged, he filed a motion requesting that the 911 calls made the night of the accident not be destroyed and be made available to the defense; the trial court granted Ojeda's motion. When the case was called for trial over two years later, the audio recordings still had not been provided to the defense, and the State assured defense counsel and the trial court that they most likely would not be recovered. Ojeda proceeded to conduct voir dire. The next morning, after the jury was empaneled, the State presented the 911 recordings to Ojeda, who immediately requested a mistrial, arguing that his theme[2] to the jury was no longer

---

[2] At trial, Ojeda argued that he conducted jury selection based on a theme of "missing evidence" and that he was prejudiced by the State's late production of the 911 recordings because "now I have a theme out there that's not right anymore." Our review of the record pertinent to voir dire, however, actually reveals no mention of missing evidence. In fact, prior to the start of voir dire, the trial court granted the State's motion in limine prohibiting the

correct, and that he did not have time to prepare for cross-examination. The trial court granted a one-day continuance so that Ojeda could review the 911 recordings and prepare accordingly.

We review the trial court's denial of a motion for mistrial under an abuse of discretion standard. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Mistrial is an extraordinary remedy appropriate only for "a narrow class of highly prejudicial and incurable errors." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). To find reversible error under an alleged *Brady* violation, a defendant must show (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to the defendant; and (3) the evidence is material, that is, there is a reasonable probability had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). The defendant bears the burden of showing that, in light of all the evidence, it is reasonably probable the outcome of the trial would have been different had the prosecutor made a timely disclosure. *Id.* A defendant cannot meet his burden under *Brady* where, despite late disclosure, evidence is nonetheless disclosed in time for him to use it in his defense. *See Marshall v. State*, 210 S.W.3d 618, 636 (Tex. Crim. App. 2006); *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). Therefore, when the requested information is actually provided at trial, as it was in this case, the issue is whether the late disclosure prejudiced the defendant. *Little*, 991 S.W.2d at 866. If the defendant was able to use the information effectively at trial, his conviction should not be reversed merely because the prosecutor did not provide the evidence as early as originally agreed. *Id.* Thus, to prevail under *Brady*, the defendant must be able to show "that the outcome of the proceeding would have been different had [the evidence] been disclosed

---

defense from inferring that the State intentionally withheld the 911 recordings. The defense stated that it would "not get into" the withholding or hiding of evidence by the State.

earlier." *Id.* at 867. Due process is satisfied when a defendant is granted a postponement or continuance in the wake of late-disclosed evidence. *Payne v. State*, 516 S.W.2d 675, 677 (Tex. Crim. App. 1975).

We conclude that Ojeda has failed to satisfy his burden of showing that he was prejudiced by the late production of the 911 recordings. Ojeda has not made a showing of any specific changes he would have made in jury selection. Ojeda also does not argue that his defense of the case changed due to the late production; in fact, he argued to the jury that the 911 recordings demonstrated that he had the normal use of his mental and physical faculties immediately after the accident. Moreover, as will be discussed below, given that there was other evidence showing he was guilty of the offense of driving while intoxicated, Ojeda cannot demonstrate that there is a reasonable probability the outcome of the trial would have been different had the evidence been disclosed earlier. In any event, the trial court's granting of a one-day continuance afforded Ojeda the opportunity to prepare for trial. *See Payne*, 516 S.W.2d at 677. Accordingly, the trial court did not abuse its discretion in refusing to grant Ojeda's motion for mistrial based on *Brady*. Ojeda's first issue is overruled.

II.     *Sufficiency of the Evidence*

Ojeda next argues that the evidence is both legally and factually insufficient to support his conviction for driving while intoxicated. In view of the Court of Criminal Appeals' recent holding in *Brooks v. State* that there is no meaningful distinction between the standards for legal and factual sufficiency review, we will review the evidence only for legal sufficiency. *See Brooks v. State*, 323 S.W.3d 893, 895, 902 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and holding the *Jackson v. Virginia*, 443 U.S. 307 (1979), legal-sufficiency standard is the only standard to be applied in determining whether the

evidence is sufficient to support a finding of each element of a criminal offense beyond a reasonable doubt); *Miranda v. State*, 350 S.W.3d 141, 147 (Tex. App.—San Antonio 2011, no pet.).

Under *Jackson*, we examine "all of the evidence in the light most favorable to the verdict," asking if a jury was "rationally justified in finding guilt beyond a reasonable doubt." *Brooks*, 323 S.W.3d at 899. We must decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *Brooks*, 323 S.W.3d at 899; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979).

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2011). A person is intoxicated if that person does not have the normal use of his mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of those substances or any other substance into the body or by having an alcohol concentration above 0.08 or more in his breath, blood, or urine. *Id.* at § 49.01(2)(A)-(B) (West 2011). The information in this case charged Ojeda as not having the normal use of mental or physical faculties.

Here, Ojeda claims that the evidence is insufficient to support his conviction because there was no evidence showing he caused the accident due to a loss of his mental or physical faculties. He argues there is no evidence he was driving erratically and that the accident was caused by the physics of the curvy road. He further contends the evidence shows that he

maintained control of his faculties because he called 911 after the accident, his speech was not slurred, and he did not have difficulty walking. Finally, he argues the results of the HGN test were not reliable because the test was performed in front of flashing lights.

Although Ojeda argues there is no evidence showing he caused the accident, we note that Ojeda was not charged with a crime requiring him to have caused the accident. He was charged with driving while intoxicated, and we conclude there was sufficient evidence of intoxication before the jury to support its verdict. Even assuming, as Ojeda argues, that the results of the HGN test were unreliable, there was other evidence of Ojeda's intoxication. Three police officers testified that they believed Ojeda to be intoxicated at the time he operated his vehicle. *See Zill v. State*, 355 S.W.3d 778, 786 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("The testimony of a police officer that an individual is intoxicated is probative evidence of intoxication."). All three officers smelled the odor of alcohol on Ojeda at the accident scene. Biegert noted Ojeda's glassy eyes and Johnson observed that Ojeda's eyes were bloodshot and droopy. All of these characteristics constitute evidence of intoxication. *See Cotton v. State*, 686 S.W.2d 140, 142–43 & 142 n.3 (Tex. Crim. App. 1985); *see also Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). In addition, there was testimony that Ojeda refused to provide a breath or blood sample, which the jury may consider as evidence of intoxication. *See* TEX. TRANSP. CODE ANN. § 724.061 (West 2011); *Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) ("Evidence of the appellant's refusal to submit to a breath test is relevant for precisely the reason that the trial court identified in the contested jury instruction, namely, that it tends to show a consciousness of guilt on his part."); *Russell v. State*, 290 S.W.3d 387, 397 (Tex.

App.—Beaumont 2009, no pet.) ("In addition, the jury in this case could have inferred from Russell's refusal to take a breath test that Russell believed he was intoxicated.").

Although Ojeda hoped to persuade the jury that he was arrested for driving while intoxicated merely because he was in the unfortunate position of having been involved in an accident with an off-duty police officer, the jury was free to judge the credibility of the witnesses and decide what weight to give their testimony. *See Brooks*, 323 S.W.3d at 899. The jury was also free to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319. Viewing all the evidence in the light most favorable to the jury's verdict, we hold the evidence was sufficient to support Ojeda's conviction for driving while intoxicated. Ojeda's second and third issues are therefore overruled.

### CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

Phylis J. Speedlin, Justice

Do not publish