Jimmy Rocky LITTLE, Appellant,

v.

The STATE of Texas.

No. 1264–98.

Court of Criminal Appeals of Texas.

May 19, 1999.

John Hendrik, Dallas, for appellant.

Michael J. Sandlin, Assist. DA, Dallas, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

KEASLER, J., delivered the unanimous opinion of the Court.

The State tried Jimmy Rocky Little for driving while intoxicated. A chemist testified that Little's blood alcohol concentration was 0.13. After this testimony, but before cross-examination, the State told Little's attorney that the chemist had lost the paperwork from his tests. We must decide whether the fact that the State had lost the underlying paperwork was favor-

able and material information which the State had to disclose to the defense. If it was, we must determine whether the State's disclosure during trial was timely. We conclude that the State disclosed the information in time for Little to use it effectively at trial.

### Facts

During the State's case-in-chief at Little's trial, a chemist testified that he analyzed a specimen of Little's blood, and the result was an alcohol concentration of 0.13. Following the chemist's direct examination, the prosecutor told Little's lawyer that the printout, or graph, upon which the chemist based his analysis, had been lost. On cross-examination, the chemist admitted that the graph had been "lost, misplaced, misfiled. I don't know. I had difficulty finding it." He further admitted that the results of Little's blood test were "not in existence . . . in the usual form that I bring with me." He admitted that he had all the records from all the other cases submitted to him the same day. Only Little's records had been lost. He testified that he did not remember this individual test because he does so many.

Little presented his own expert witness who testified that, without the graphs, he could not say that the chemist's conclusions were correct. On rebuttal, the State recalled the chemist. He testified that, despite the loss of the graphs, he believed his test was accurate. He testified that he obtained all the test information "out of the computer that was used or would have been used for generating a report available, and I have no reason to believe that any other result would have been obtained."

During closing argument, Little argued to the jury that the State's blood test results were either unreliable or insufficient to convict because "the paper" was missing.

The jury convicted Little of misdemeanor driving while intoxicated, and the trial court sentenced him to 90 days in jail, probated for 24 months. Little filed a motion for new trial, alleging the State violated *Brady v. Maryland*[1] by failing to disclose the fact that the graph from the blood test had been lost. At a hearing on the motion, the prosecutor testified that the chemist told her right before his testimony that "he did not have the graphs, but he did have things on the computer which gave the results of the blood and that he could still testify to those things, but he did not have the actual paperwork of the graphs." She testified that this was her first "blood case," and she did not know "what the graphs entail" or "what paperwork was associated with" the chemist's testimony. She said that, after her direct examination of the chemist, her supervisor suggested that "that was something that we should turn over," so they did so.

The chief prosecutor testified that the chemist told him, right before he was to testify, that he did not have his files. However, he was still confident in the blood test results. The chief prosecutor was "trying to figure out if the blood test results [were] going to be admissible" when his supervisor walked in. He asked his supervisor his opinion, and the supervisor responded, "Well, another thing you've got to ask yourself is, is this exculpatory." The chief prosecutor immediately informed Little's attorney of the lost evidence, but this was after the chemist had already testified on direct examination. The trial court denied the motion for new trial.

Little appealed, arguing that the trial court erred in denying the motion for new trial. The Court of Appeals agreed, reversing the conviction and remanding for a new trial.[2] We granted the State's petition for discretionary review.

1. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. *Little v. State,* 971 S.W.2d 729 (Tex.App.— Dallas 1998).

## Governing Law

■ A prosecutor has an affirmative duty to turn over material, favorable evidence to the defense.[3] Additionally, the government is constitutionally required to preserve evidence that might be expected to play a significant role in the suspect's defense.[4] So the Supreme Court's jurisprudence divides cases involving nondisclosure of evidence into two areas: *Brady* addresses exculpatory evidence still in the government's possession. *Youngblood* and *Trombetta* address cases in which the government no longer possesses the disputed evidence. In this case, Little alleges the State failed to disclose *the fact that* it had lost evidence. So although evidence was lost by the State, Little presents a *Brady* claim.

■ The three-part test used to determine whether a prosecutor's actions have violated due process is whether the prosecutor (1) failed to disclose evidence (2) favorable to the accused and (3) the evidence is material, meaning there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.[5] We have indicated that, if the evidence was turned over in time for the defendant to use it in his defense, the defendant's *Brady* claim would fail.[6] The Fifth Circuit has elaborated on this concept, holding that when the evidence is disclosed at trial, the issue is whether the tardy disclosure prejudiced the defendant.[7] If the defendant received the material in time to use it effectively at trial, his conviction should not be reversed just because it was not disclosed as early as it might have and should have been.[8] Several of our courts of appeals have adopted this test.[9]

## Preventing the admission of the blood test results

Little argues that the fact that the graph had been lost was favorable to him because, if he had known of the loss, he would have objected to the chemist's testimony on two grounds: (1) that the computer records alone were not a sufficient basis for the chemist's opinion, and (2) that the results of the blood test were hearsay. He also seems to argue that he would have objected on the grounds that the graph was a predicate to the admissibility of the blood test results. He implies that his objections would have been sustained and that he would have kept the jury from hearing the blood test results.

■ Favorable evidence is any evidence that, if disclosed and used effectively, may make the difference between conviction and acquittal.[10] It includes both exculpatory and impeachment evidence.[11] Exculpatory evidence is testimony or other evi-

3. *McFarland v. State*, 928 S.W.2d 482, 511 (Tex.Crim.App.1996), citing *Brady v. Maryland, supra.*

4. *U.S. v. Binker*, 795 F.2d 1218 (5th Cir. 1986); *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

5. *Ex parte Kimes*, 872 S.W.2d 700, 702–3 (Tex.Crim.App.1993); *U.S. v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). *See also Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).

6. *Juarez v. State*, 439 S.W.2d 346, 348 (Tex. Crim.App.1969).

7. *U.S. v. McKinney*, 758 F.2d 1036, 1050 (5th Cir.1985).

8. *Ibid.*

9. *State v. DeLeon*, 971 S.W.2d 701, 705 (Tex. App.—Amarillo 1998, pet. ref'd); *Cohen v. State*, 966 S.W.2d 756, 763 (Tex.App.—Beaumont 1998, pet. ref'd); *Yates v. State*, 941 S.W.2d 357, 364 (Tex.App.—Waco 1997, pet. ref'd); *Palmer v. State*, 902 S.W.2d 561, 565 (Tex.App.—Houston [1st Dist.] 1995, no pet.); *Givens v. State*, 749 S.W.2d 954, 957 (Tex. App.—Fort Worth 1988, pet. ref'd).

10. *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim.App.1992), citing *Bagley*, 473 U.S. at 676, 105 S.Ct. at 3380.

11. *Ibid.*

dence which tends to justify, excuse or clear the defendant from alleged fault or guilt.[12] Impeachment evidence is that which is offered to dispute, disparage, deny, or contradict.[13]

■ Little is not arguing that the loss of the graph was exculpatory in that it justified, excused, or cleared him from guilt. Nor is he claiming the loss of the graph was impeaching in that it disputed, disparaged, denied, or contradicted other evidence. Instead, Little says he could have used the fact that the graph had been lost to exclude testimony or evidence. He claims the favorable nature of the information was its use in keeping inculpatory facts out of evidence.

If the blood test results or the chemist's opinion were inadmissible without the graph, Little could have, and should have, objected to their admission at trial. The State did not introduce the graph before introducing the blood test results or the chemist's testimony. So under Little's theory, he could have objected at the time the blood test results were offered by the State, either on the grounds that the predicate for their admissibility had not been laid or that there was no sufficient basis for the chemist's opinion. Also, immediately upon learning about the missing graph, he could have taken the chemist on voir dire to ascertain the basis for his opinion. Then he could have lodged a hearsay objection to the blood test results' admission. (We express no opinion on this objection's validity.)

To prevail under *Brady*, Little must show not only a failure to timely disclose favorable evidence. He must also show he was prejudiced by the tardy disclosure. He did not object to the admission of the blood test results or attempt to take the chemist on voir dire after the loss of the

graph was disclosed. So he cannot show that the outcome of the proceeding would have been different had that fact been disclosed earlier. And he cannot show that the trial was unfair, since he had every opportunity to object to the blood test results before and after the State disclosed the fact that the graph had been lost. Little received the information in time to put it to effective use at trial, under his theory. He just neglected to do so.

The Court of Appeals concluded that in the absence of the graph, "the trial court *may* have determined [the chemist] did not have a sufficient basis" for his testimony.[14] The Court then assumed the chemist's testimony was inadmissible and found a reasonable probability that the testimony contributed to Little's conviction. The Court of Appeals erred in assuming the chemist's testimony was inadmissible and in finding Little shouldered his burden merely by showing what the trial court "may" have done. Little must show a reasonable probability that, had the evidence been disclosed to the defense earlier, the result of the proceeding would have been different.[15] He fails to satisfy this burden.

### Performing an independent analysis of test

The Court of Appeals also noted that the absence of the printout thwarted any ability of Little's expert witness to question the reliability or accuracy of the chemist's testimony.[16] But Little did not make this claim to either the trial court, the court of appeals, or this Court. And this is a *Trombetta/Youngblood* claim, not a *Brady* claim. That is, even if the State had disclosed the loss of the graph three months before trial, Little's expert witness still would be unable to question the testimony's reliability. So Little is only claiming

12. *Ibid.*

13. *Ibid.*

14. *Little,* 971 S.W.2d at 731 (emphasis added).

15. See *Kimes,* 872 S.W.2d at 702–3.

16. *Ibid.*

a *Brady* violation. He does not allege any error in his expert's inability to test the accuracy of the chemist's testimony. The Court of Appeals erred in finding this factor to be persuasive.

### Impeaching the chemist's credibility

Finally, Little claims that the graph's loss was a fact which he could use to impeach the chemist's testimony. But Little concedes that the prosecutor disclosed its absence to him during trial, "in time for him to use it to impeach the chemist, and he did use it for that purpose." Little was successful in getting the chemist to admit that the graph had been "lost, misplaced, misfiled," and that the results of the blood test were not in existence "in the usual form that I bring with me." In addition, Little argued to the jury that the State "didn't even bring you the piece of paper it [the blood test] was written on." The impeachment value of the lost graph was utilized by Little, during both cross-examination and closing argument.

### Conclusion

Little received the information about the lost graph in time to put it to effective use at trial. Therefore, he fails to show a *Brady* violation. *Brady* does not apply to these facts. We reverse the decision of the Court of Appeals and remand this cause to that court for consideration of Little's remaining point of error.