

IN THE
TENTH COURT OF APPEALS

No. 10-11-00256-CR

WILLIAM JOHNSON,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 12th District Court
Walker County, Texas
Trial Court No. 25,166

MEMORANDUM OPINION

A jury convicted Appellant William Johnson of the second-degree felony offense of delivery of a controlled substance, and the trial court assessed his punishment, enhanced by prior felony convictions, at forty years' imprisonment. This appeal ensued. We will affirm.

BACKGROUND

Walker County Sheriff's Detective Daniel Barrett was doing surveillance on a house where Johnson was living when Jerrod Bridges visited the house. Detective

Barrett stopped Bridges after he left the house and found narcotics on him. Bridges then agreed to work with the sheriff's department by purchasing crack cocaine from Johnson.

The next day, Detective Barrett met Bridges, searched Bridges and his car, outfitted Bridges with two recording devices (one audio and one audio/video), and told Bridges to arrange to buy five crack cocaine rocks from Johnson for $100. Bridges drove to Johnson's residence while Detective Barrett followed. Once at the residence, Bridges approached the back door and then went inside. Detective Barrett watched from an unmarked car on the side of the street. Bridges was in the house for approximately two minutes. Bridges then exited the house, got into his vehicle, and drove immediately to a debriefing location. Detective Barrett again followed.

Once at the debriefing location, Detective Barrett stopped the recording devices, searched Bridges and his car again, and secured five crack cocaine rocks. Bridges testified that he bought the five crack cocaine rocks from Johnson. The audio/video recording of the controlled-buy was admitted as State's Exhibit 1.

## MOTION FOR CONTINUANCE

In his first issue, Johnson contends that the trial court denied him due process when it denied his motion for continuance, which was filed on the morning of trial after additional discovery material, including the criminal history of the witness alleged to have received the delivery of the controlled substance (Bridges), was provided on Friday afternoon before the start of trial on Tuesday morning.

Johnson filed a motion for continuance on March 22, 2011 (the first day of trial), which provided as follows: To comply with the Standing Discovery Order in Criminal Cases, the State was required to furnish all known convictions that were admissible for impeachment concerning any of the State's proposed witnesses and all exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by December 20, 2010. Johnson was provided with "the extensive criminal history" of Bridges "late on the afternoon of Friday, March 18, 2011," and he believed that several other witnesses listed by the State might also have extensive criminal histories. His failure to request the continuance would waive any *Brady* violation, as well as any violation of a discovery order, and the motion for continuance was not made for purposes of delay but that justice might be done.

The trial court conducted a hearing on the motion, at which Johnson asked for a continuance "because if we do not ask for continuance at this point, then we waive our *Brady* material and any violation of discovery orders will also be waived." The State replied that the criminal history provided to the defense during the week prior was not that of a confidential informant but that of the man named in the indictment who allegedly bought the controlled substance from Johnson. The State also stated that it had no intention of calling any of the other people on the witness list except police officers and DPS employees at the lab. The trial court denied the motion.

The denial of a motion for continuance is within the sound discretion of the trial court, and we review a trial court's denial of a motion for continuance for an abuse of discretion. *Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006); *Janecka v. State*,

937 S.W.2d 456, 468 (Tex. Crim. App. 1996). An appellant claiming erroneous denial of a motion for continuance must show (1) the trial court erred in denying the motion for continuance, and (2) such denial harmed him in some tangible way. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010).

A prosecutor has an affirmative duty to turn over material, favorable evidence to the defense. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-97; *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). Impeachment evidence, as well as exculpatory evidence, is included within the scope of the *Brady* rule. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). To determine whether a prosecutor's actions violate a defendant's due-process rights, we employ a three-part test. *Id.* We consider whether: (1) the prosecutor failed to disclose evidence; (2) the evidence is favorable to the accused; and (3) the evidence is material (*i.e.,* whether a reasonable probability exists that the result of the proceeding would have been different if the evidence had been properly disclosed to the defense). *Id.*; *Little*, 991 S.W.2d at 866. When the disclosure of evidence occurs at trial (or, as here, several days before trial), the issue becomes whether the tardy disclosure prejudiced the defendant. *See Little*, 991 S.W.2d at 866. If the defendant received the material in time to use it effectively at trial, his conviction should not be reversed just because it was not disclosed as early as it should have been. *Id.*

Here, on direct examination, Bridges testified that he had previously been convicted of theft as well as two other felonies in 1999 and 2000, respectively. During cross-examination the next day, Johnson also questioned Bridges about his criminal history. Bridges testified that he had been convicted of a felony in February 2000;

convicted of theft in September 2001, June 2002, October 2009, and October 2010; and convicted of possession of narcotics in 2010. During closing argument, Johnson again emphasized Bridges's criminal record:

> But I want to talk about, we've talked a lot about the confidential informant, the criminal source, whatever you want to call Mr. Bridges. I can't think of a better example of somebody that has motive to tell a story one way or another. He's just gotten stopped for possessing and he's found with drugs in his car or on his person the day before. Officer Barrett or Detective Barrett says that he followed him and stopped him for a traffic violation and searched him. He found drugs on him. Mr. Bridges, voluntarily he comes up, hey, you know, please don't do anything to me, you know, I'll do, you know, I'll testify. I'll be your snitch. He volunteered. The police didn't approach him, he was, hey, take me. He wanted to save his own tail. These are the things that you have to look at when you're assessing the reliability of this witness. What did he have to gain?

> We're getting into word games when we say we didn't make any promises or there's nothing concrete. You can bet your bottom dollar Mr. Bridges was doing this for a reason. He knew that he had a better shot of not getting another conviction or not more charges pressed on him if he came up with something for the cops, motive, incentive. Can we believe this guy?

> [Defense co-counsel] asked Mr. Bridges about his record, his criminal record. He was convicted of theft on October 15, 2010; then we have the May 2010. We know that Detective Barrett found drugs on him then. Then we have a bunch of thefts from 2001 to 2009 and then we have some other felony -- Mr. Bridges didn't testify what that was -- in 2000. He's been through the system, he knows what its [sic] going to take to save his own tail.

It is apparent from this record that the evidence was turned over in time for Johnson to use it adequately in his defense. Thus, assuming without deciding that the failure to disclose the evidence until several days before trial would constitute a *Brady* violation, we conclude that Johnson has made no showing that he was prejudiced by

the tardy disclosure of the information. *See id.* ("We have indicated that, if the evidence was turned over in time for the defendant to use it in his defense, the defendant's *Brady* claim would fail."). Accordingly, we conclude that the trial court did not abuse its discretion in denying Johnson's motion for continuance based on the alleged *Brady* violation. *See Gonzales*, 304 S.W.3d at 843.

Furthermore, assuming without deciding that the State violated the Standing Discovery Order,[1] Johnson has not shown that the violation harmed him in some tangible way. Johnson states in his brief:

> In failing to grant the requested continuance, the trial court violated Appellant's right to due process, denied him the opportunity to further investigate the existence of material impeachment evidence, and allowed the State of Texas an advantage in the trial of this matter by endorsing the State's failure to timely disclose valuable impeachment evidence regarding the sole witness capable of testifying to Appellant's actions that formed the basis of the indictment in this matter.

But this bare assertion is insufficient to show harm.

To show that the trial court abused its discretion in refusing to grant a motion for continuance, Johnson must have established "specific prejudice to his cause arising from the trial court's failure to continue the trial." *See Heiselbetz v. State*, 906 S.W.2d 500, 511-12 (Tex. Crim. App. 1995). Ordinarily, a defendant develops the evidence showing how he was harmed by the trial court's denial of a requested continuance during a hearing on a motion for new trial. *Gonzales*, 304 S.W.3d at 842-43. Although Johnson filed a "Motion for New Trial and Motion in Arrest of Judgment," this motion does not assert the trial court's denial of his request for a continuance as a basis for the trial court

---

[1] The Standing Discovery Order is not part of the record on appeal.

to grant a new trial. Additionally, we find no indication that the trial court conducted an evidentiary hearing on Johnson's motion for new trial. Thus, Johnson did not show that the denial of his motion for continuance harmed him in some tangible way. We conclude then that the trial court did not abuse its discretion in denying Johnson's motion for continuance, and we overrule his first issue. *See Gonzales*, 304 S.W.3d at 843.

## AUTHENTICATION

In his second issue, Johnson contends that the trial court abused its discretion "when it allowed the admission of State's Exhibit 1 over the predicate objection of counsel for Appellant."

On March 22, 2011, the State attempted to admit State's Exhibit 1, an audio/video recording of the controlled buy. Detective Barrett testified as follows: the recording came from a camera that he had placed on Bridges; the camera was capable of making an accurate recording; Barrett was competent in operating it; he had watched the recording; he recognized the voices on the video; the voices, other than his own, belonged to Detective Davila, Bridges, and Johnson; the video had not been altered; and the video still looked and sounded the way it did the first time he saw it. The State then tendered the exhibit to defense counsel. Johnson objected to the admission of the exhibit, stating "Detective Barrett hasn't laid any kind of foundation as to how he can tell the voice of my client or anyone else on this video. There was no foundation for that whatsoever." The trial court sustained Johnson's objection.

Immediately thereafter, Detective Barrett testified: he had heard Johnson speak on numerous occasions and recognized Johnson's voice on the recording; he had had

only two conversations with Bridges but recognized his voice; he recognized his own voice; and he recognized Detective Davila's voice from working with him and regularly talking to him. Johnson then took Detective Barrett on voir dire. During Johnson's questioning, Detective Barrett said that although he is not an expert on voice recognition and he had only heard Bridges voice on the day before the recording was made, he knew Bridges's voice from that meeting. Detective Barrett also stated that he had heard Johnson's voice several times on different recordings. At that time, Johnson then stated that he was still going to object. The trial court overruled the objection and admitted State's Exhibit 1.

The State then attempted to publish the recording to the jury; however, the recording was apparently of poor quality. The following exchange took place:

> [Defense Counsel]: Judge, I renew my objection under 901 that we can't authenticate this video under 901 given the condition, the voices are all over, the tape's all over. I don't really think they can verify this.
>
> THE COURT: That's sustained.
>
> [Defense Counsel]: I'd like to move that this video be stricken, taken out.
>
> THE COURT: That's sustained.
>
> [Prosecutor]: It's not the actual video, it's the quality of the equipment that we're using.
>
> THE COURT: Yeah, I understand. It's not usable because of the sound quality is such at least as played it's of no benefit to the jury in this case.
>
> [Defense Counsel]: Can I have an instruction to the jury to disregard anything they have seen or heard?

THE COURT:  If they have seen or heard anything if they can, they're to disregard it.

. . . .

(Outside the presence of the jury, open court, defendant present).

(CD played.)

[Prosecutor]:  Judge I would say by the fact that you can hear through all the sound problems that's all the people involved, Barrett and [Johnson] and the other guy, that's the way they talk.

THE COURT:  What else am I going to hear?

[Prosecutor]:  At this point I think it's over with, it's just driving back.

THE COURT:  At this time the objection to the introduction of State's 1 and publishing it to the jury is sustained.

The next day, the State again attempted to admit State's Exhibit 1.  Detective Barrett testified that State's Exhibit 1 is an audio/video recording of a control-buy done on May 4, 2010; it was recorded on an audio/video recording device or DVR recorder; the device is capable of making an accurate recording, and he is competent in operating the device; he has seen the video recording and listened to the voices on the disk; he recognizes all the voices on the disk; they are Johnson's, Detective Davila's, Bridges's, and his own; the video did not appear to be altered in any way; and the actual content from the exhibit the day before appeared to be the same.  The State then tendered the exhibit to defense counsel.  The following exchange took place:

[Defense counsel]:  I'm going to renew my objection under 901 through the questioning yesterday and today.  I think Detective Barrett is no more of an expert in analyzing those voices than anyone here.

[Prosecutor]: I don't believe the rules contemplate a need for expert voice recognition.

THE COURT: The objection is overruled. Assuming this machine plays it. State's 1 is admitted.

The State then published the exhibit to the jury without further objection.

We review a trial court's admission of evidence for an abuse of discretion. *See Druery v. State*, 225 S.W.3d 491, 502-03 (Tex. Crim. App. 2007). A trial judge does not abuse its discretion if it "reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified." *Id.* at 502.

Texas Rule of Evidence 901 governs the authentication of evidence. *See* TEX. R. EVID. 901. It states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). Rule 901(b) provides a nonexclusive list of methods for authenticating evidence. *See* TEX. R. EVID. 901(b). Rule 901(b)(5) states that a voice, whether heard firsthand or through mechanical or electronic transmission or recording, may be identified "by opinion based upon hearing the voice at anytime under circumstances connecting it with the alleged speaker." TEX. R. EVID. 901(b)(5). Based on the record as detailed above, Detective Barrett's testimony was sufficient to identify the voices on the recording. *See id.*

Johnson also cites in his brief subsections (1) and (4) of Rule 901(b) and states broadly, "In the testimony provided by Barrett on both March 22 and March 23, none of the authenticity requirements for the admission of State's Exhibit 1 under Rule 901 are

met." But Johnson's objection at trial was limited to Detective Barrett's identification of the voices on the recording. Therefore, the part of Johnson's complaint on appeal that is broader than that made at trial is not preserved for review. *See* TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) ("[T]he point of error on appeal must comport with the objection made at trial.").

For these reasons, the trial court did not abuse its discretion by admitting State's Exhibit 1 into evidence, and we overrule Johnson's second issue.

## CONCLUSION

Having overruled both of Johnson's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
    (Chief Justice Gray concurring with note)*
Affirmed
Opinion delivered and filed May 30, 2012
Do not publish
[CRPM]

* (Chief Justice Gray concurs in the judgment to the extent it affirms the trial court's judgment. A separate opinion will not issue.)