COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-14-00011-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 7 |
| ISELA DOMINGUEZ, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20110C10845) |
|  | § |  |

## **O P I N I O N**

The State of Texas seeks reversal of a new trial order granted on legal sufficiency, *Brady*[1] violation, and interest-of-justice grounds in favor of Isela Dominguez. In two issues, the State contends it did not violate *Brady* by failing to affirmatively provide a photograph of Dominguez's injuries and the criminal history of a non-testifying complaining witness for Dominguez's use at her assault trial. The State further contends that Dominguez's conviction rested on legally sufficient evidence and that she failed to articulate valid interest-of-justice grounds in her motion.

We agree that the trial court lacked adequate cause to grant a new trial. We reverse the new trial grant and reinstate Dominguez's conviction.

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**BACKGROUND**
*Factual History*

In April 2011, Imelda Dominguez and her husband Robert were traveling by motorcycle from El Paso to a wine festival in Las Cruces, New Mexico, when they stopped at a tobacco shop in a shopping center located on Airway Boulevard. As Imelda and Robert Dominguez attempted to leave the shopping center parking lot, a blue SUV raced between the motorcycles and almost knocked them over. The three vehicles came to a stop. Imelda Dominguez testified that the defendant, Isela Dominguez, exited the SUV and began screaming at and hitting Robert. The record shows that Robert Dominguez was bigamously married to both women at that time. Imelda testified that she was unaware of Robert's pre-existing marriage until after she had already married him, and that she had a previous run-in with Isela before.

When Robert attempted to drive away from Isela, she ran after him and grabbed the sissy bar on the back of his motorcycle. Isela then tripped and was dragged about ten feet behind Robert's motorcycle. Imelda Dominguez testified she was about fifteen to twenty feet from where Isela came to rest on the pavement. Imelda stated that she did not think Robert was aware that Isela had been dragged, and that as soon as he saw her behind him, he made a U-turn and returned to check on her. An off-duty paramedic also checked on Isela. Imelda further testified that when she drove over to see what happened to Isela, that Isela jumped up from the pavement, grabbed Imelda by the hair, and pulled her off her motorcycle into the street. The motorcycle then fell on top of Imelda while still running and started to leak gasoline. Imelda testified that as she lay on the ground pinned by her motorcycle, Isela—now joined by Isela's mother—began hitting and kicking Imelda, and at some point, Isela ripped one of Imelda's earrings from out of her ear, causing pain and bleeding. Robert Dominguez and the off-duty paramedic broke up the fight and lifted the motorcycle off Imelda. Isela refused medical treatment for her injuries.

2

After arguing in the parking lot, Robert and Imelda Dominguez left the parking lot to return to their home. Isela followed them. According to Imelda, Isela was driving very carelessly and almost ran them over. When the three converged at Imelda and Robert's house, Isela continued arguing with Robert and claimed that his motorcycle actually belonged to her. Imelda told Robert to give Isela the motorcycle. Isela's brother-in-law eventually came to retrieve it. Later that day, police arrested Imelda for criminal mischief based on Isela's allegation that Imelda had cut the seat on her motorcycle. After Imelda was booked into jail, authorities took her to the hospital for treatment of what was later determined to be a concussion. Imelda suffered from vomiting, a severe headache, and a black eye. At trial, the State introduced photographs of Imelda's injuries, depicting Imelda's black eye and arm bruising.

### *Procedural History*

The State charged Isela Dominguez with one count of assault. On September 30, 2013, the jury returned a guilty verdict, and the trial court, upon the recommendation of Dominguez and the State, sentenced Dominguez to 365 days in jail, probated for twelve months, imposed a $100 fine, and ordered restitution. On October 29, 2013, Dominguez moved for a new trial. Dominguez alleged that the verdict was contrary to the law and evidence, and that the State violated *Brady* disclosure requirements by failing to disclose: (1) the District Attorney's subpoena request for Robert and Imelda Dominguez; (2) case information regarding Robert Dominguez's indictment for unauthorized use of a vehicle and aggravated assault with a deadly weapon in Cause No. 20110D04645[2]; and (3) photographs of her injuries "as a result of the above Cause Numbers . . . ." Dominguez requested that the trial court grant her motion on *Brady* violation grounds and in the interests of justice.

---

[2] The records show that the unauthorized use of a vehicle charge was dismissed and that Robert Dominguez pleaded guilty to one count of assault causing bodily injury. He was sentenced to time served.

3

At a hearing on her motion for new trial, Dominguez's counsel attested to not receiving or being able to access a picture depicting her injuries on the El Paso District Attorney's Office electronic portal.[3] The State conceded that the photos of Dominguez's injuries were not accessible electronically through the El Paso District Attorney's Office case portal in this matter because those photos had been electronically assigned to the digital file for the assault case against Robert Dominguez, in which Isela was listed as the victim. However, a prosecutor maintained that the photos were available in the physical case file, and that counsel for Dominguez was aware of their existence at the time of trial and could have used them. With respect to Robert Dominguez's criminal history, the State argued that it was not required to provide that information to Isela Dominguez, given that Robert never showed up for trial to testify for the State, and, alternatively, that his criminal history was public information.

After taking the matter under advisement, the trial court reversed Dominguez's conviction and ordered a new trial. The State appealed. *See* TEX.CODE CRIM.PROC.ANN. art. 44.01(a)(2)-(3)(West Supp. 2014)(defining appellate jurisdiction over state appeals in criminal actions).

## DICUSSION

In two issues, the State maintains that the trial court erred by granting a new trial because the evidence underpinning Dominguez's conviction was legally sufficient, the State did not violate *Brady*'s mandates, and because Dominguez essentially waived her interest-of-justice by failing to point out any serious trial flaws that would cast doubt on the validity of her conviction.

### *Standard of Review*

---

[3] The 34th Judicial District Attorney's Office employs an online portal allowing enrolled defense attorneys to have electronic access to the State's file on their clients, subject to certain terms and conditions. *See generally* 34th Judicial Dist. Attorney's Office, *Conditions of District Attorney Portal Use by Defense Attorneys*, EL PASO CNTY., http://www.epcounty.com/da/documents/caseportalterms.pdf (last visited July 7, 2015)(outlining system use policy).

4

We review the trial court's new trial ruling for abuse of discretion. *State v. Herndon*, 215 S.W.3d 901, 906 (Tex.Crim.App. 2007). In reviewing a new trial grant, "we look to the grounds pleaded by the movant in the motion and determine whether any of these grounds provide a basis for granting the new trial." *State v. Fury*, 186 S.W.3d 67, 73 (Tex.App.--Houston [1st Dist.] 2005, pet. ref'd). A trial judge "cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or received a raw deal." *Herndon*, 215 S.W.3d at 907 [Internal quotation marks omitted]. Instead, even where a defendant urges a new trial on interest of justice grounds, "[a] motion for a new trial, whether for guilt or punishment, requires a valid legal claim." *State v. Thomas*, 428 S.W.3d 99, 107 (Tex.Crim.App. 2014). "To grant a new trial for a non-legal or legally invalid reason is an abuse of discretion." *Herndon,* 215 S.W.3d at 907.

The trial court must grant the defendant a new trial for any of the reasons articulated in TEX.R.APP.P. 21.3, including "when the verdict is contrary to the law and the evidence." TEX.R.APP.P. 21.3(h). "The trial court retains the discretionary power to grant a new trial for any legal reason not listed in TEX.R.APP.P. 21.3." *State v. Vigil,* No. 08-13-00273-CR, 2015 WL 2353507, at *3 (Tex.App.--El Paso May 15, 2015, no pet.)(not designated for publication). While "[t]he defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial[,] . . . trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial." *Herndon,* 215 S.W.3d at 909. The Court of Criminal Appeals has declined to set bright-line rules for the appellate courts to use in assessing whether the trial court's abused its discretion on a ground not enumerated in TEX.R.APP.P. 21.3, but the Court has suggested "a trial court would not generally

5

abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure." *Herndon*, 215 S.W.3d at 909.

## A.
### *Legal Sufficiency*

As a threshold matter, we address the State's legal sufficiency argument, subsumed in State's Issue One. In her motion for new trial, Dominguez maintained that the verdict was contrary to the law and the facts, i.e., legally insufficient. She raises no sufficiency points in her appellate reply brief. We address the issue because the State here bears the burden of proof on its appeal. Further, it constitutes a ground the trial court ostensibly considered in rendering its new trial order. We find the jury's guilty verdict is legal sufficient.

**Applicable Law**

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Lucio v. State*, 351 S.W.3d 878, 894 (Tex.Crim.App. 2011); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). "Our role on legal sufficiency review is not to usurp the jury and replace its verdict with our own; instead, we serve as a procedural safeguard, ensuring that whatever verdict the jury rendered comports with due process." *Urias v. State*, No. 08–12–00090–CR, 2014 WL 1259397, at *2 (Tex.App.--El Paso Mar. 26, 2014, no pet.)(not designated for publication). "Our role on appeal is restricted to guarding against the

6

rare occurrence when a factfinder does not act rationally." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010)[Internal quotation marks omitted]. "We do not overturn a verdict unless it is irrational or unsupported by proof beyond a reasonable doubt." *Smallwood v. State*, No. 08-12-00215-CR, 2014 WL 4269155, at *3 (Tex.App.--El Paso Aug. 29, 2014, pet. ref'd)(not designated for publication).

A person commits assault of she "intentionally, knowingly, or recklessly causes bodily injury to another . . . ." TEX.PENAL CODE ANN. § 22.01(a)(1)(West Supp. 2014).

### Analysis

The testimony of a single witness, if believed by the jury, may be legally sufficient to uphold a conviction. *Shah v. State*, 403 S.W.3d 29, 35 (Tex.App.--Houston [1st Dist.] 2012, pet. ref'd). Here, the content of Imelda Dominguez's testimony is sufficient to uphold the assault charge. Bodily injury is defined in the Penal Code as "physical pain, illness, or any impairment of physical condition." TEX.PENAL CODE ANN. § 1.07(a)(8)(West Supp. 2014). Imelda testified that Isela pulled her off her motorcycle by her hair, then kicked Imelda and ripped out her earrings while she was still pinned down. If the jury believed this testimony, then it could have found that Isela intentionally, knowingly, or recklessly caused Imelda bodily injury. The trial court's new trial order could not have rested on legal insufficiency grounds.

### B.
### Brady *Violations*

We next turn to the evidence suppression allegations. In the remainder of Issue One, the State contends that a photograph of Dominguez's injuries and a copy of a non-testifying complaining witness' criminal history did not constitute *Brady* materials.

### Applicable Law

Due process requires prosecutorial disclosure of information material to guilt or

innocence that is favorable to the defendant.  *Brady*, 373 U.S. at 87-88, 83 S.Ct. at 1196-97. This rule recognizes the reality that suppression of such evidence would give the State an unfair advantage in "shap[ing] a trial that bears heavily on the defendant[;]" the affirmative disclosure requirements imposed by *Brady* help to avoid "cast[ing] the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice[.]" *Id*. at 88, 83 S.Ct. at 1197.

"A *Brady* violation occurs when the state suppresses, willfully or inadvertently, evidence favorable to" a defendant.  *Harm v. State*, 183 S.W.3d 403, 406 (Tex.Crim.App. 2006)  A defendant states a proper *Brady* claim where:  (1) "the State failed to disclose evidence, regardless of the prosecution's good faith or bad faith;" (2) "the withheld evidence is favorable to him;" (3) "the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different[;]" and (4) "the evidence central to the *Brady* claim [is] admissible in court." *Pena v. State*, 353 S.W.3d 797, 809 (Tex.Crim.App. 2011).  "[W]e will not hesitate to reverse a case for *Brady* violations[] should we have doubts about the fairness of the resulting conviction." *Castaneda v. State*, 28 S.W.3d 216, 222 (Tex.App.--El Paso 2000, pet. ref'd).

"The state's duty to reveal *Brady* material to the defense attaches when the information comes into the state's possession, whether or not the defense requested the information." *Harm*, 183 S.W.3d at 407.  "However, the state is not required to seek out exculpatory evidence independently on appellant's behalf, or furnish appellant with exculpatory or mitigating evidence that is fully accessible to appellant from other sources." *Id*.  "Favorable evidence is any evidence that, if disclosed and used effectively, may make the difference between conviction and acquittal." *Little v. State*, 991 S.W.2d 864, 866 (Tex.Crim.App. 1999).  "It includes both exculpatory and impeachment evidence." *Id*. "Exculpatory evidence is testimony or other

evidence which tends to justify, excuse or clear the defendant from alleged fault or guilt." *Id*. at 866-67. "Impeachment evidence is that which is offered to dispute, disparage, deny, or contradict." *Little*, 991 S.W.2d at 867.

## 1.
### Photographs of Defendant's Injuries

We first turn out attention to the photographs. According to the allegations in her motion for new trial, the photographs allegedly suppressed by the State depict the injuries she sustained as the victim of Robert Dominguez, who was charged with unauthorized use of a vehicle and aggravated assault with a deadly weapon, assumedly out of this incident.

Dominguez's related *Brady* claim would fail on the merits because the photograph is not material to the case at bar. *See Pena*, 353 S.W.3d at 809 (before reversing for state suppression of evidence, appellate court must determine there is reasonable probability of difference in trial outcome in light of disclosure). In *Ball v. State*, 631 S.W.2d 809, 810-11 (Tex.App.--Eastland 1982, pet. ref'd), the Eastland Court of Appeals, in reviewing a murder conviction, ruled that a photograph of an injury to the defendant's eye constituted *Brady* material that the State should have turned over to the defense. This case is distinguishable. In *Ball*, the defendant's trial testimony raised the issues of self-defense and heat of passion, which, if believed, either would have exonerated him completely or else allowed the jury to convict on the lesser-included offense of manslaughter. Because the photographs depicting the defendant's injuries could be used to bolster his claim that he acted in self-defense, they were material to the defense, and the State had a duty to furnish them to the defendant.

By contrast, here, Isela Dominguez never makes clear in her brief how the injuries she sustained when she grabbed on to the back of Robert's motorcycle are material to this case, which pertains to her assault of Imelda thereafter. Thus, even if the State did withhold these

9

photographs, we do not believe there is a reasonable probability that the outcome of trial would have been different had the photographs been disclosed. The trial court's judgment could not have rested on this ground.

## 2.
### Criminal History of Non-Testifying Witness

We next address whether the State was required, under *Brady*, to disclose Robert Dominugez's criminal history to Isela Dominguez. Although Isela repeatedly refers to Robert as the complaining witness in her brief, Isela was actually charged with assault against Imelda Dominguez, not Robert. The State attempted to subpoena Robert Dominguez and included him on its witness list, but he did not show up for trial.

The State must disclose evidence that impeaches a State's witness under *Brady*. *United States v. Bagley*, 473 U.S. 667, 676-77, 105 S.Ct. 3375, 3380-81, 87 L.Ed.2d 481 (1985); *Wilkerson v. State*, No. 04-11-00391-CR, 2012 WL 1940650, at *2 (Tex.App.--San Antonio May 30, 2012, no pet.)(mem. op., not designated for publication); *see also Jones v. State*, No. 06-11-00085-CR, 2012 WL 1813465, at *1 (Tex.App.--Texarkana May 16, 2012, pet. ref'd)(mem. op., not designated for publication)(noting that a reversible *Brady* violation occurs from failure to "disclose evidence that may impeach the credibility of a State's witness where the witness' credibility is material to the disposition of an accused's guilt").

The State concedes that if Robert had testified at trial, it would have had to disclose his criminal history information as impeachment evidence under *Brady*. The crux of the State's argument on appeal is that because he did not testify, it had no obligation to turn over impeachment evidence to Dominguez under *Brady*. We question whether the State can escape its *Brady* obligations by simply failing to call a witness on its list, particularly in light of the fact that the Rules of Evidence permit parties to attack a non-testifying hearsay declarant's credibility

10

"by any evidence that would be admissible for those purposes if the declarant had testified as a witness." TEX.R.EVID. 806. The State points out that it never sought to admit any hearsay statements Robert made, thereby mooting that question and rendering any impeachment evidence inadmissible and thus outside the bounds of *Brady*. *See Pena*, 353 S.W.3d at 809 (suppressed evidence must be admissible before court may reverse criminal conviction on *Brady* grounds). While we agree the State's argument fits within the letter of *Brady* on appellate review, we do not believe the State's after-the-fact justification—that is, that taint from failure to promptly disclose impeachment evidence against a State's witness who would have apparently testified but for the State's inability to secure his presence via subpoena is vitiated because his testimony was never actually offered—strongly evinces compliance with the spirit of *Brady*.[4] *Cf. Harm*, 183

---

[4]

| THE COURT: | Let me interrupt you a little bit with regard to – there is a list of the subpoena request. As I understand the Defendant's motion, part of what they are complaining about is that you do list Robert Javier Dominguez as a victim, and that there – you did not provide the criminal background information with regard to that victim. |

MS. ROGNESS: Right.

| THE COURT: | You did provide criminal background information with regard to Imelda Dominguez in his Exhibit No. 1. |

MS. ROGNESS: Right.

| THE COURT: | But there was nothing comparable to that with regard to the other victim. [. . .] I understand that he did not testify. |

MS. ROGNESS: And that is the next thing I address in my response.

So the only *Brady* information that we are to give is when it's exculpatory or impeachment.

And I kind of ran through this earlier. You can't impeach someone who doesn't testify. So we knew the day of trial – the day before trial when preparing for this case, that he had not been subpoenaed.

Had he miraculously shown up, like sometimes happens, we would have compiled *Brady* material. We don't go around giving out rap sheet information when it doesn't apply. NCIC reports, they're very strict about who issues that information. And unless we're required to disclose that information – and we aren't if a witness isn't going to testify – then we can't.

.     .     .

11

S.W.3d at 407 (affirmative *Brady* duty of disclosure attaches at the time information comes into the State's possession, not on the eve of trial).  Indeed, by engaging in this practice of compiling and disclosing *Brady* information only in the event a State's witness actually shows up for trial, the State essentially forces a defendant to either ask for a surprise continuance mid-trial or else risk waiving any *Brady* complaint on appeal.  *See Fury*, 186 S.W.3d at 73-74 (describing a defendant's failure to ask for a continuance upon the disclosure of *Brady* material at trial as a situation in which the defendant either waived any *Brady* error or essentially conceded that any *Brady* error did not prejudice him).  We hesitate to endorse this type of prosecutorial brinksmanship as being consistent with the spirit of *Brady*, and our opinion should not be taken as a tacit blessing of this strategy.

However, we need not delve into this fray.  Here, we agree that impeachment information against Robert would have been irrelevant and inadmissible under these circumstances, meaning that even if the State violated its *Brady* disclosure duties, error was essentially harmless because Dominguez could not have used this information at trial.  *Pena*, 353 S.W.3d at 809.  We also note that Dominguez's request regarding Robert's criminal history information could have been obtained in the exercise of due diligence.  Although there is no general public records exception to *Brady*, "[d]ocuments . . . that are a part of public records are not deemed suppressed by the State if defense counsel should know of them and fails to obtain the records because of a lack of

---

MS. ROGNESS:   Also, if the Defense had wanted Mr. Dominguez to testify, we would have provided that impeachment information.  They could have subpoenaed and called him as a witness as well – just running all avenues.

THE COURT:   Let me ask you about that.  I mean, does he need to know about that criminal history in order to make the decision that, Hey, I do want to bring this guy in to get that?

MS. ROGNESS:   Well, he did know about the assault.  He might – well, and the other thing, the first one I mentioned, the fraudulent use of ID information, they were – the defendant and Mr. Dominugez were married at that point.  Under his jail information, he listed her as the contact.  It would be very strange that she was not actually aware of that as well.  And so I argue that they do know.  They were aware.  And if they weren't, it was lack of due diligence.

diligence in his own investigation." *Dalbosco v. State*, 978 S.W.2d 236, 238 (Tex.App.--Texarkana 1998, pet. ref'd). Based on these facts, we find no reversible *Brady* error and no "serious flaws" affecting substantial trial rights that would justify the trial court's exercise of discretion on this ground. *See Herndon,* 215 S.W.3d at 909.

In short, the trial court's order could not have rested on the State's failure to disclose these materials. Issue One is sustained.

## C.
### *Interest of Justice Grounds*

Finally, in Issue Two, the State contends that the trial court could not have granted a new trial on interest-of-justice grounds under these circumstances. We agree.

As stated previously, the defendant need not show reversible error *per se* before obtaining a new trial in the trial court's exercise of discretion. *Herndon*, 215 S.W.3d at 909. However, the trial court may only grant a new trial in the interest of justice where a defendant alleges serious flaws that affected her right to a fair trial. *Id*. Here, Dominguez made no specific allegations as to why she should receive a new trial in the interest of justice. Because the defendant did not "allege sufficient grounds to appraise the trial judge and the State as to why [s]he believes" she should receive a new trial in the interest of justice, the trial court could not have relied on interest-of-justice grounds in reaching its ruling. *See State v. Varkonyi*, No. 08-06-00262-CR, 2008 WL 821580, at *3 (Tex.App.--El Paso Mar. 27, 2008, pet. dism'd)(not designated for publication)[Internal citation and quotation marks omitted].

Issue Two is sustained.

## CONCLUSION

We do not take allegations of *Brady* violations lightly. While we find the technological and procedural issues raised by this case troubling, we find no legal violation of *Brady* under

these facts.  We find the evidence underpinning Dominguez's conviction was legally sufficient, that the prosecution technically complied with the letter of its *Brady* requirements, and Dominguez failed to state adequate interest-of-justice grounds.  Therefore, the trial court could not have granted a new trial as based on Dominguez's motion for new trial.

The State's two appellate issues are sustained.  We reverse the trial court's order and reinstate Dominguez's conviction.

July 8, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

14