

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos. 07-18-00431-CR & 07-18-00432-CR

THOMAS MAYHEW, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court Nos. 67,386-E & 75,005-E, Honorable Abe Lopez, Presiding

February 18, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER, and DOSS, JJ.

Through our Cause No. 07-18-00432-CR, Thomas Mayhew (appellant) appeals his convictions for two counts of indecency with a child by sexual contact in trial court cause number 75,005-E. Four distinct convictions form the basis of his appeal in our Cause No. 07-18-00431-CR. Two of the four entered in trial court cause number 67,386-E involved the aggravated sexual assault of a child under 14, while the others were for indecency with a child by contact or sexual contact. His two issues before us concern

whether the trial court erred in denying his motions for continuance and mistrial, and whether trial counsel was ineffective. We affirm.

*Issue One – Continuance and Mistrial*

Appellant's allegations about the continuance and mistrial stem from a purported *Brady*[1] violation. Allegedly, "prosecutorial misconduct [occurred] at trial consist[ing] of the failure by the State to timely provide appellant with information containing potential impeachment evidence of a fact witness who testified during guilt innocence." The information was disclosed by the State to defense counsel after the jury retired to consider guilt/innocence and returned a verdict of guilty. We overrule the issue.

Under *Brady*, the prosecution is obligated to disclose to the defense both exculpatory and impeaching evidence. *Brady*, 373 U.S. at 87; *Pena v. State*, 353 S.W.3d 797, 810–11 (Tex. Crim. App. 2011). However, the burden lies with the defendant to prove that the State failed to fulfill its duty. *Perales v. State*, No. 07-12-00290-CR, 2013 Tex. App. LEXIS 11476, at *3 (Tex. App.—Amarillo Sept. 5, 2013, no pet.) (mem. op., not designated for publication); *Pitman v. State*, 372 S.W.3d 261, 264 (Tex. App.—Fort Worth 2012, pet. ref'd). This burden normally requires him to establish that 1) pertinent information was not disclosed; 2) the undisclosed information was exculpatory or susceptible to being used as impeachment evidence favorable to the accused, and 3) the data was material. *Pena*, 353 S.W.3d at 809; *Perales*, 2013 Tex. App. LEXIS 11476, at *3. When such information was not concealed but rather untimely disclosed, a defendant must also show that he was prejudiced by the delay. *Little v. State*, 991 S.W.2d 864, 867

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

(Tex. Crim. App. 1999); *State v. DeLeon*, 971 S.W.2d 701, 705–06 (Tex. App.—Amarillo 1998, pet. ref'd).

Interestingly, prejudice is also a component of materiality, according to our Court of Criminal Appeals. *See Harm v. State,* 183 S.W.3d 403, 406 (Tex. Crim. App. 2006) (stating that "[i]ncorporated into the third prong, materiality, is a requirement that [the] defendant must be prejudiced by the state's failure to disclose"). Indeed, the tests used in assessing both are rather synonymous. *See Banks v. Dretke*, 540 U.S. 668, 698, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004) (stating that "[u]nless suppressed evidence is 'material for Brady purposes, [its] suppression [does] not give rise to sufficient prejudice to overcome [a] procedural default'"). For instance, purported *Brady* information is material when "there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different." *Salazar v. State*, 222 S.W.3d 10, 14 (Tex. App.—Amarillo 2006, pet. ref'd); *see also Banks,* 540 U.S. at 698 (stating that materiality is shown when the evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict). In turn, prejudice arising from the failure to timely disclose is shown when the "result of the proceeding would have been different had the evidence been disclosed earlier." *State v. Tarin*, No. 04-17-00198-CR, 2018 Tex. App. LEXIS 3055, at *18 (Tex. App.—San Antonio May 2, 2018, pet. ref'd) (mem. op., not designated for publication); *accord Little*, 991 S.W.2d at 867 (requiring the defendant to establish prejudice and stating that, under the present circumstances, "he cannot show that the outcome of the proceeding would have been different had that fact been disclosed earlier"). So, since both materiality and prejudice depend on the probability of a different outcome had the data been revealed, undertaking

the analysis of one effectively encompasses the other. And, finally, in establishing if the outcome would have differed, the defendant's burden obligates him to assess his claim "in light of all the evidence." *Ex parte Lalonde*, 570 S.W.3d 716, 725 (Tex. Crim. App. 2019) (quoting *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)). The mere chance that the undisclosed data "might have helped . . . or affected the trial's outcome" is not enough. *Id.*

Here, appellant's victims were two children with whom he lived. The charges against him were instigated after a 16-year-old (Ivory) saw him and one of the two children laying on a couch together and staring at the ceiling. Ivory characterized the activity as odd or "weird" but saw no touching or the like. That resulted in her informing the children's mother about the incident. Eventually, Ivory contacted the police, as well. That communication eventually led to an investigation and appellant's ultimate prosecution. During trial, Ivory related the foregoing incident to the jury. Little else was said by her, though.

The alleged *Brady* information in question concerned a much earlier incident between Ivory and appellant. Apparently, the latter sexually assaulted her, too, years earlier. She described that assault during an exchange with one of the State's prosecutors in preparation for trial. Ivory then told her mother about the exchange with the prosecutor and what she said. Yet, "her recall [of appellant's assault upon her] differed from her mother's recall of what Ivory had told her . . . regarding this prior extraneous offense," according to the *Brady* notification given defense counsel. That resulted in Ivory telling the prosecutor with whom she originally spoke that her present recollection of the assault differed from her earlier recollection. Another prosecutor

uncovered this bit of information after the guilt/innocence phase of the trial resulted in a guilty verdict and notified defense counsel of it.

Upon being afforded the *Brady* notification, defense counsel moved for a continuance. So too did he request a mistrial, contending that "if I would have had that material – had knowledge of that, then I could have used that maybe to impeach the witness about her recount of some of the events that she testified to." Because he lacked it, he told the trial court he "would be asking for a mistrial." Later, counsel added that "I'm entitled to a mistrial on this case because I could have used that information . . . to impeach her because she was testifying from her memory on things that occurred years and years ago." That "may have been an appeal to the Jury that she may have not remembered correctly." Though counsel conceded, while talking to the trial court, that the substance of Ivory's testimony merely encompassed the instigation of the police inquiry into his assaults upon the two children, he nevertheless "could have used her poor memory against her when she was testifying even about that because . . . she said that she . . . caught them" laying on the couch looking at the ceiling. The trial court ultimately denied the requests for a continuance and mistrial.

The substance of the foregoing discussion between defense counsel and the trial court is determinative of appellant's current complaint on appeal. Most notably, defense counsel said nothing about the inculpatory evidence presented by the State while demanding a mistrial and continuance. Again, his burden obligated him to address the potential for a different outcome "in light of all the evidence." He did not do that.

Instead, defense counsel merely focused on the allegedly impeaching nature of Ivory's "poor memory." He sought to use her "poor memory" to impeach her on an issue

5

bereft of misconduct, that is, on whether she simply saw appellant and one of the children laying on a couch staring at the ceiling. At best, that issue was tangential to appellant's guilt or innocence.

Additionally, his basis for thinking he could impeach Ivory related to some difference in how she recalled appellant having sexually assaulted her years earlier. Presumably, to reach his goal he would have had to broach that extraneous sexual assault to the jury. Yet, missing from defense counsel's argument below (and appellant's argument here) is explanation about how allowing defense counsel to inform the jury about a distinct sexual assault on a third victim helped appellant. Nor can we contrive a reasonable scenario in which divulging that tidbit of information would be more beneficial to appellant's cause. Defense counsel telling the jury to ignore Ivory's testimony on a tangential issue because she may not remember aspects of how appellant sexually assaulted her seems somewhat harmful in our view.

Nor did defense counsel attempt to explain to the trial court how Ivory's past and present recollection of his assault upon her differed. The difference may or may not have been substantive. It may or may not have dealt with an utterly unimportant factoid. Instead, the trial court was left to speculate about that, as was this Court. Yet, such speculation could have been avoided when the trial court offered appellant the opportunity to examine Ivory, who had yet to leave the courthouse. Instead, defense counsel responded to the opportunity with: "I – I'm not going to agree to that." Apparently surprised by that reply, the trial court asked: "You don't want to hear from her?" "No, sir," counsel replied. He wanted "to get the investigation done because apparently if she had memory problems, we're going to need to talk to a third-party to identify that." At hand

was the very chance to determine whether Ivory even "had memory problems," but appellant did not want to pursue it.

Simply put, defense counsel had an immediate chance to fulfill his burden to establish the materiality of the *Brady* information in question. Yet, he let it go and apparently assumed that there was a consequential difference between Ivory's past and present recollection of appellant's distinct assault upon her. Then, he founded his entire *Brady* complaint upon that unproven assumption. His decision resulted in the trial court denying the *Brady* challenge, request for a mistrial, and continuance. It did so because it viewed Ivory as "not much of a fact witness as to anything really" and as having "nothing to offer about the incidences or anything that happened to the girls." In other words, the trial judge believed either that the undeveloped assumption about Ivory's ability to recall an extraneous offense was immaterial or that the State's delay in revealing the matter was nonprejudicial.

Given the circumstances previously discussed, the inculpatory testimony provided by the two children appellant victimized, and appellant's own consciousness of guilt exemplified by his effort to flee and hide once State authorities removed the children from the home, we cannot disagree with the trial court. Appellant did not establish a reasonable probability that the trial's outcome would have differed had the supposed *Brady* evidence been revealed in a timely manner.

*Issue Two – Ineffective Assistance of Counsel*

As for the ineffective assistance of counsel matter, appellant contends that trial counsel's effort fell below the objective standard of reasonableness because counsel mistakenly believed that 1) certain juvenile adjudications of appellant involving sexual

misconduct could not be used to enhance punishment and 2) appellant was eligible for probation. Furthermore, this deficiency in counsel's knowledge of the law allegedly was prejudicial because it resulted in appellant rejecting plea offers from the State. We overrule the issue.

The record contains evidence of trial counsel informing appellant about several plea offers, appellant declining them, and appellant opting to risk trial. Missing though is evidence of the plea terms being offered and the criminal counts to which those offers pertained. We are left to speculate about that. Appellant's six convictions resulted in sentences from 50 years to life in prison. Whether the offers differed from those sentences in any significant way is simply a matter of conjecture, given the record before us. So too are we left to speculate about the substance of any conversations between trial counsel and his client regarding those offers and the factors, if any, considered in appellant's decision to reject them. He may have been influenced by something trial counsel said or he may have merely sought to "roll the dice." We do not know.

"[C]laims of ineffective assistance 'are not built on retrospective speculation.'" *Gallegos v. State*, No. 07-17-00137-CR, 2017 Tex. App. LEXIS 11755, at *6 (Tex. App.—Amarillo Dec. 18, 2017, pet. ref'd) (mem. op., not designated for publication). Yet, that is what we are being asked to do, engage in retrospective speculation. Without evidence about the terms of the plea offers, counsel's discussion with appellant about them, and the reasons why appellant rejected them, we cannot assess whether the mistakes attributed to trial counsel created a reasonable probability, or probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have differed. *See Avila v. State*, No. 07-18-00143-CR, 2019 Tex. App. LEXIS 6364, at *4–5

(Tex. App.—Amarillo July 24, 2019, no pet.) (per curiam) (mem. op., not designated for publication) (so describing the prejudice needed to uphold a claim of ineffective counsel). So, appellant failed to satisfy his burden to prove counsel's mistakes prejudiced him, and that was a prerequisite to succeeding upon a claim of ineffective assistance. *Id.*

 The judgments are affirmed.

        Brian Quinn
        Chief Justice

Do not publish.