In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00129-CR**
_____

**CALVIN CHARLES ROSETTE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 23-04-05528-CR**

## MEMORANDUM OPINION

A grand jury indicted Appellant Calvin Charles Rosette for aggravated robbery with the use of a deadly weapon. *See* Tex. Penal Code Ann. § 29.03. The indictment alleged two previous felony convictions as enhancements. Rosette pleaded "not guilty," but a jury found him guilty as charged in the indictment. Rosette pleaded "true" to both enhancements, and after a hearing on punishment, the trial court assessed punishment at fifty years of confinement. In a single issue on appeal, Rosette complains about a video that was shown to the jury at trial, and he

alleges that the State failed in its duty to obtain and disclose the incriminating video evidence before trial, and the video evidence should not have been admitted at trial or the trial court should have declared a mistrial. We affirm.

Evidence at Trial

Testimony of "Amy"[1]

Amy testified that she is a nurse, and she works as the director of surgical services at HCA Kingwood Hospital ("Kingwood Hospital"). Amy recalled that, on April 12, 2023, she saw a "suspicious person" coming out of her office as she was walking towards her office. She asked the managers in the office if they had seen the person, and they had not, so she went to see where the person had gone. As she looked for the person, she called security, the house supervisor, and the Houston Police Department ("HPD"), and she advised employees to stay in their offices. At some point, she heard a "huge smash" when the supply chain manager Tony ran into the suspicious man and then the two men hit a wall. Amy testified that the unknown man "had a knife in his hand and there was blood everywhere[,]" and Tony and Ronan, another supervisor, held the man so he could not leave. According to Amy, the man had cut himself, but hospital employees had gotten the knife from him, and

---

[1] We use pseudonyms to refer to the alleged victims. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process.").

when HPD arrived, they took over. Amy recalled that the man had taken the wallet of Debra—a hospital employee—and the man said, "Let me go, I didn't do anything, let me go." Amy agreed there was a surveillance camera at the end of one of the hallways where the incident occurred. Amy identified the defendant as the man with the wallet she saw at the hospital.

Testimony of "Marla"

Marla testified that she is a registered nurse, and she works as a manager of perioperative services at Kingwood Hospital. She recalled there was an incident on April 12, 2023, where "some theft was happening, and [] we chased down a guy in the hallway and stopped him from leaving the building." According to Marla, that day she was sitting in her office with Ronan, one of the supervisors, and their director came in and asked whether they had seen an unfamiliar man come into the office suite. Marla recalled that one of the other employees had asked the man who he was and what he was doing, and the man said he was with HVAC, but when Debra asked to see his badge, the man did not have one, and Debra said she would have to get someone to verify who he was. According to Marla, when the man turned, Debra said, "He has my wallet in his hand[,]" and the man pushed through her and Debra to run towards the exit. Marla recalled that she, Ronan, Tony, and some other employees chased after the man and tried to keep the man in the building. Marla testified that he had an open pocketknife, and the man had cut his hand. Marla

3

identified the defendant as the man who tussled with Tony that day and who had the wallet. On cross-examination, she agreed there were security cameras in the hallway, but she did not know where they were.

Discovery of Cell Phone Videos

After Marla testified, she emailed two videos and a screenshot to the prosecutors that she had recorded on her cell phone directly from a hospital computer after the incident occurred. The defense moved for a mistrial as follows:

> [Defense counsel]: Your honor, I have to make a motion for mistrial.
> . . .
> This is not the State's fault. I'm not pointing the finger at [the prosecutor] or anyone in their office, but apparently there is surveillance video of this incident that one of the witnesses just alerted to the State.
>
> [Prosecutor]: Judge, the witness that just got off the stand mentioned that she had a recording - - two separate recordings on her cell phone of the computer including a surveillance video that shows this defendant running out of the room. . . .

Defense counsel said surveillance video had been an issue "since the beginning[,]" that he had subpoenaed any video, and he was told the State did not have any surveillance video because the incident occurred in a blind spot in the hospital. The prosecutor explained to the trial court that there were no surveillance videos "in the system[,]" and the newly-discovered videos are from a witness's personal cell phone. After the trial court viewed the videos, defense counsel stated that the videos were not provided to him and, "in all honesty, for the record, the State didn't get them until 15 minutes ago is my understanding[.]" The State assured the trial court

that it had requested surveillance video from the hospital. Defense counsel stated, "I'm asking for a mistrial for this evidence not being produced. It could have been instrumental in my client deciding to take a plea deal earlier in this case, and he's been prejudiced by this fact." The State responded that, although it would like the videos to be entered into evidence because they would be inculpatory, that the proper remedy for late disclosure was to exclude the evidence under article 39.14 and not a mistrial. The trial court described the videos as "filmed with a cell phone camera while watching security footage on a computer[,]" and stated, "it appears [] that everybody is in agreement that this was not some intentional Brady violation[,]" and dismissed the jury for the day.

During further discussion at the bench, the prosecutor told the trial court that the State understood that the hospital had a "30-day override period" and without a request, surveillance video does not get saved. The prosecutor then explained that the timestamp on the witness's cell phone video was around 8:00 a.m. on the morning after the incident. Defense counsel told the trial court that "even though it wasn't [] the State's fault, it's still a due process violation for [the defendant]."

The trial court stated that there did not appear to be any willful withholding of evidence and gave the parties until 9:00 a.m. the next morning to review the newly-discovered videos. The trial court stated, "I don't know how they, the State, could have anticipated that one of the witnesses would have a cell phone recording

5

of a security camera footage on [a hospital] computer." Defense counsel told the trial court, "And, Judge, I want to be abundantly clear on the record. I'm not accusing the State of anything. I don't think for a second that either [of the prosecutors] had any idea that this existed until [] the conclusion of the witness's testimony." The trial court concluded that the proper remedy was a continuance.

The following morning, defense counsel renewed its motion for mistrial, arguing that the newly-discovered evidence violated the defendant's due process rights, it was "arguably inculpatory," and it might have swayed the defendant's decision whether to accept a plea deal. The trial court overruled the objections and concluded "it's clear it was an unintentional and perhaps unavoidable discovery violation[]" for which a short continuance was the appropriate remedy, but the trial court denied the motion for a mistrial.

Testimony of "Paige"

Paige testified that she worked as the director of nursing at Kingwood Hospital. Paige recalled that on April 12, 2023, she discovered a man in one of the hospital offices who had a wallet that belonged to one of her colleagues. According to Paige, the man told her he was checking the HVAC, she asked to see his badge, and he showed her a CenterPoint Energy ID but not a vendor badge that the hospital requires. Paige testified that the man then pushed past her to go out the way he came in. Paige recalled that as the man pushed past her, Debra said, "He has my wallet."

6

According to Paige, as Debra and Marla were trying to stop the man, Paige tried to alert hospital security, and eventually the wallet and a phone fell to the floor. Paige recalled that Tony and Ronan tackled the man, "his head went through the wall[,]" and a "knife came out from his hand and flew across the floor."

Testimony of "Oliver"

Oliver testified that he was the director of security for Kingwood Hospital. Oliver recalled that, early in April of 2023, Debra alerted him that there was an incident in progress and a man had stolen her purse. Oliver testified that Debra pointed in the direction where the man was headed, and Oliver and his team went after him. According to Oliver, another employee ran into the man, and the man crashed into a wall. Oliver testified that, by the time he arrived, Tony and Ronan were physically restraining the man, and Oliver's team helped get the man to the floor. Oliver recalled that, as they were taking the man to the floor, someone called out, "Knife[,]" and the weapon fell. According to Oliver, the knife did not injure anyone but the man. Oliver did not recall HPD or any employees asking him for video of the incident afterwards. Oliver said he did not believe the hospital would still have any video of the incident because the hospital's camera system only has a 30-day retention period, after which video is deleted. On cross-examination, Oliver testified that, at the time of the incident, certain authorized personnel could pull up the security video on their computer, including the CEO and COO of the hospital.

7

Testimony of "Sherry"

Sherry testified that she is the operating room and endoscopy manager at Kingwood Hospital. She identified the defendant as the man who was at the hospital and pulled a knife on her team members. Sherry recalled that on April 12, 2023, she was in her office with Marla and Ronan, and Maddie—a hospital director—came in and asked them about a "suspicious" person who was in the office. Sherry testified that she and Marla went to look for the man. Sherry recalled that at some point, the man went into Debra's office. Sherry testified that, during the search, she saw the man running towards her. Sherry testified that Tony ran after the man, and when he contacted the man, a "physical altercation went down and [] the knife was pulled." According to Sherry, it took two men—Tony and Ronan—to pull the man to the floor. After Tony and the man ran into the wall, they were wrestling, and Sherry testified "there was blood everywhere." Sherry later learned that the man had cut himself when he pulled out the knife. Sherry testified that after Tony and Ronan subdued the man, security took the man to the ER because he had cut himself. On cross-examination, Sherry agreed that after the incident, she asked to see surveillance video of the event, and she and Marla watched it in the hospital on the COO's office computer. Sherry testified that she understood that copies of the surveillance video were turned over to the prosecutors or the police.

<u>Testimony of Officer Crystal Corona</u>

Officer Crystal Corona, an officer for HPD, testified that she was a patrol officer on April 12, 2023. She recalled getting a high priority call "for a citizen holding suspect" at Kingwood Hospital. According to Corona, when she arrived at the scene, the suspect was already detained. She agreed she was wearing a body camera that day, and she identified State's Exhibit 26 as footage from her body camera, which was admitted and published to the jury. Corona testified that the video shows the suspect being detained by another officer and analyzing his injuries, and the suspect's name was Calvin Charles Rosette. According to Corona, she learned that the suspect had entered an employee's office at Kingwood Hospital and stolen the employee's wallet, the suspect had a knife, and he shoved some of the employees. Corona testified that taking the wallet along with using a knife is aggravated robbery. Corona identified the defendant as the person who was arrested for aggravated robbery. Corona testified that she received from another officer property that was found on Rosette, which included a knife and several credit cards that did not belong to Rosette. On cross-examination, Corona agreed that she did not look at any hospital surveillance videos.

<u>Testimony of "Debra"</u>

Debra testified that she is the communication and community engagement director for Kingwood Hospital. Debra recalled an incident from April 12, 2023,

when she heard someone say, "That's him, that's him[,]" and a man passed by her and out of her office. According to Debra, she quizzed the man because not many people show up to their office suites, and typically they would have a badge from the hospital. Debra recalled that the man said he was there to fix the air conditioner, and when another employee offered to take him to security to get a badge, Debra noticed the man had her red wallet in his hand, which she previously had in her purse underneath her desk. Debra remembered saying, "Oh, my God. He's got my wallet[,]" and then the man shoved her to the side to run past her, and she chased after him. Debra testified that three or four hospital employees tackled the man, she jumped on the man, and he dropped the wallet. On cross-examination, she agreed she never saw the man with a knife in his hand. She also testified that she did not see any surveillance video of the incident.

Additional Testimony of "Marla"

On further direct examination, Marla agreed that she had presented the State with some new information after she testified—namely, security videos of the incident. Marla recalled that she watched the video the day after the incident in the assistant COO's office. Marla identified State's Exhibit 30 as a still photo and Exhibit 29 was a video of the incident. At this point, the defense objected under article 39.14 to the late disclosure of this information and asked the trial court to

10

exclude the exhibits, "[a]lthough it's not the State's fault[.]" The trial court overruled the objection and admitted the exhibits.

Marla described the still photo in Exhibit 30 as the area where Ronan and Tony had collided with the defendant. Marla testified that she believed that the hospital had given the surveillance videos to the State. Exhibit 29—the video Marla took with her cell phone—was published to the jury, and Marla testified that it shows the defendant running out of Debra's office and it shows her and others chasing after the defendant.

Testimony of Officer Chad Thompson-Martin

Chad Thompson-Martin ("Martin"), a patrol officer with HPD, testified that he was dispatched to Kingwood Hospital on April 12, 2023, for a report of a man getting into vehicles or a robbery inside the hospital. Upon arrival, he found a man lying on the floor inside the hospital and being held down by hospital staff. Martin recognized State's Exhibit 20 as video from the body camera he wore on the day of the incident, and the exhibit was admitted into evidence and published to the jury. Martin also testified that he took a statement from Tony, from which the officer concluded that an aggravated robbery had occurred. Martin identified the defendant as the person he arrested that day for the aggravated robbery. According to Martin, the officers recovered a Buck knife and three credit cards registered to other people. Martin identified State's Exhibit 33 as the knife recovered at the hospital.

11

Testimony of "Tony"

Tony testified that he is the operating room manager at Kingwood Hospital, and on April 12, 2023, he saw a commotion near the operating room, people were yelling, "stop that guy[,]" a man tried to push Tony out of the way, and Tony tried to hold the man. Tony recalled that the man said, "Let me go or I'm going to stab you[,]" and Tony noticed that the man was holding a knife. According to Tony, the man swung the knife at him, Tony grabbed the man, and other people came to help. Tony identified the defendant as the man who swung a knife at him.

Testimony of "Ronan"

Ronan, a registered nurse at Kingwood Hospital, testified that on April 12, 2023, he encountered someone who intended to steal from hospital employees, and he chased after the man. According to Ronan, he initially heard other employees yelling at the man, Ronan chased after the man, and Ronan caught up with the man after the man collided with Tony. Ronan recalled that when he and Tony held the man down, Ronan saw that the man had a knife, and Ronan took the knife away from the man. Ronan identified the defendant as the man with the knife that day.

After the State rested, the defense called no witnesses and rested. The jury found Rosette guilty as charged in the indictment. In a hearing on punishment, Rosette pleaded "true" to two prior felony convictions. After hearing evidence, the

trial court found the enhancements true and assessed punishment at fifty years of confinement. Rosette timely filed a Notice of Appeal.

## Issue

Appellant argues that the State willfully withheld videos from a key witness, even though Appellant had requested video evidence before trial. According to Appellant, even though the video was mailed to the prosecutor after trial began, the prosecutor had a duty to disclose knowledge of the video to the defense. Appellant argues that the prosecutor had a duty to obtain the video under article 39.14(h) of the Texas Code of Criminal Procedure and "[p]resumably if [the prosecutor] had asked the witness during their meeting two weeks prior to trial, she could have had the video two weeks earlier." Appellant concedes that the trial court did not abuse its discretion in admitting the video into evidence, but Appellant argues that the court's ruling admitting the evidence was based on "erroneous information" that the prosecutor failed to correct. Appellant argues that error occurred "because of the State's malfeasance[]"—the State's failure to correct the trial court's misapprehension that the State only learned of the video after trial began—and the remedy is for this Court to reverse and remand. Appellant also argues that the trial court erred by denying his motion for mistrial.

13

Standard of Review and Applicable Law

We review a trial court's ruling on the admission or exclusion of evidence under an abuse of discretion standard. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010). If the trial court's decision was within the bounds of reasonable disagreement, the appellate court should not disturb it. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). We will sustain the trial court's decision if it was correct on any applicable theory of law. *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999).

"A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009). A mistrial is required only in extreme circumstances where the prejudice is incurable because it "is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *see also Russeau v. State*, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005). A mistrial should be granted only when residual prejudice remains after less drastic alternatives are explored. *Ocon v. State*, 284 S.W.3d 880, 884-85 (Tex. Crim. App. 2009).

A trial judge's denial of a motion for mistrial is reviewed under an abuse of discretion standard. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010).

We uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* We view the evidence in the light most favorable to the trial court's ruling and consider only the arguments that were before the trial court at the time of its ruling. *Ocon*, 284 S.W.3d at 884.

Article 39.14 of the Texas Code of Criminal Procedure requires, in relevant part, the State to produce "as soon as practicable after receiving a timely request" to the defendant "evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state." Tex. Code Crim. Proc. Ann. art. 39.14(a); *see also State v. Heath*, 696 S.W.3d 677, 683 (Tex. Crim. App. 2024). "[I]tems in the possession, control, or custody of 'the state,' include[s] items in the possession of law enforcement." *Heath*, 696 S.W.3d at 693.

Analysis

We first note that Appellant's argument on appeal does not comport with his objection at trial. The record reflects that during the trial, the defense repeatedly told the trial court that it was not the State's fault that the cell phone video was not discovered or produced before trial. By contrast, on appeal, Appellant argues that "the State failed to correct the Court's misapprehension that the video was known about only after trial began[]" and that the State committed "malfeasance" and had willfully violated article 39.14 of the Texas Code of Criminal Procedure. An

15

appellant's point of error on appeal must comport with the objection he raised in the trial court, or else the issue is not preserved for appeal. *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014); *see also* Tex. R. App. P. 33.1(a) (preserving error for appellate review requires the complaining party to show that he presented his complaint to the trial court in a timely request, objection, or motion and that the trial court ruled on the request). Appellant's brief fails to cite to record evidence showing that the State "willfully withheld" the cell phone video before trial or that the State knew about the cell phone video before trial. *See* Tex. R. App. P. 38.1(i) (requiring an appellate brief to cite to the record and to applicable authority). And we find no evidence in the record suggesting that the State knew of Marla's cell phone video before trial but failed to produce it. Marla testified that she gave the video on her cell phone to the State *after she testified* on the first day of trial, and there was no contradictory testimony on this point.

But even assuming without deciding that Appellant preserved error, we find no abuse of discretion. Appellant concedes that the trial court did not abuse its discretion when admitting the cell phone video into evidence, so we limit our further analysis to whether the trial court abused its discretion by denying the motion for mistrial.

The trial court concluded that it did not appear that the State willfully withheld evidence, and the appropriate remedy was to give a short continuance for the defense

16

to review the newly-discovered cell phone video. We use a three-part test to determine whether a prosecutor's actions violated due process: (1) whether the prosecutor failed to disclose evidence (2) that is favorable to the accused and (3) the evidence is material, meaning there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). In this case, the evidence was not favorable to the defense, and the defense attorney agreed the video was "arguably inculpatory," so the second prong is not satisfied because the cell phone video was not favorable to the accused. Further, Appellant does not demonstrate that, had the evidence been disclosed to the defense before trial, there is a reasonable probability that the result at trial would have been different. Rather, the defense argued in the trial court that if defendant had known about the cell phone video before trial, he might not have turned down the State's last plea offer.

A defendant does not have an absolute right to enter into a plea bargain. *See Gaal v. State*, 332 S.W.3d 448, 457 (Tex. Crim. App. 2011) (explaining that a defendant does not have an absolute right to enter into a plea bargain) (citing *Morano v. State*, 572 S.W.2d 550, 551 (Tex. Crim. App. [Panel Op.] 1978)); *Garza v. State*, No. 09-23-00122-CR, 2025 Tex. App. LEXIS 811, at *19 (Tex. App.—Beaumont Feb. 12, 2025, no pet.) (mem. op., not designated for publication) ("A criminal defendant does not have a constitutional or statutory right to a plea bargain.") (citing

17

*Perkins v. Ct. of Appeals for Third Supreme Jud. Dist.*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987)). Although "the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be[,] the Constitution does not require the prosecutor to share all useful information with the defendant." *U.S. v. Ruiz*, 536 U.S. 622, 629, 633 (2002) (concluding that the Constitution does not require the government to disclose material impeachment evidence before entering into a plea agreement with a criminal defendant) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). "Sufficient awareness of the factual circumstances surrounding a plea, as opposed to complete knowledge, is required when a plea is entered." *Ex parte Broussard*, 517 S.W.3d 814, 817 (Tex. Crim. App. 2017). "A defendant may have a sufficient factual awareness despite laboring under misapprehensions." *Id.*

The trial court determined that a short continuance was the appropriate remedy because there was no evidence the State willfully withheld the contested evidence. Appellant does not argue on appeal that the short continuance that the trial court granted was not sufficient to permit him to review or use the cell phone video effectively at trial. *Cf. Little*, 991 S.W.2d at 866-67 (no prejudice for tardy disclosure of impeachment evidence where defendant received the information in time to use it at trial but neglected to do so); *Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999) (even where exculpatory evidence is not disclosed until trial, an appellant

must show the State's tardy disclosure prejudiced him). Amy, Marla, Paige, and Debra testified that they saw the defendant fleeing with the wallet. Oliver, Sherry, Tony, and Ronan testified that they saw the defendant fleeing and with a knife. Appellant has failed to show that the circumstances at trial were so extraordinary that residual prejudice remained after the less drastic remedy of a continuance was granted. *See Ocon*, 284 S.W.3d at 884-85. Nor has Appellant shown he was denied any process that was due. *See Gaal*, 332 S.W.3d at 457; *Morano*, 572 S.W.2d at 551; *Garza*, 2025 Tex. App. LEXIS 811, at *19. We conclude that the trial court did not abuse its discretion by denying Appellant's motion for mistrial, and we overrule Appellant's issue. *See Coble*, 330 S.W.3d at 292.

Having overruled Appellant's issue, we affirm the trial court's judgment of conviction.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on May 19, 2025
Opinion Delivered July 23, 2025
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.